No. 99-162

IN THE SUPREME COURT OF THE STATE OF MONTANA

1999 MT 279

296 Mont. 520

989 P.2d 847

---

SNOW COUNTRY CONSTRUCTION, INC.,

MICHAEL J. ROESSMAN, and PAMELA M.

ROESSMAN,

Plaintiffs and Appellants,

v.

MICHAEL J. LAABS, DEBRA L. LAABS,

and LAABS & ASSOCIATES, INC.

Defendants and Respondents.

---

APPEAL FROM: District Court of the Eleventh Judicial District,

In and for the County of Flathead,

The Honorable Katherine R. Curtis, Judge presiding.

COUNSEL OF RECORD:

For Appellants:

Lee C. Henning and D. James McCubbin, Henning & Keedy, P.L.L.C.;

Kalispell, Montana

For Respondents:

Gary M. Zadick, Ugrin, Alexander, Zadick & Higgins, P.C.;

Great Falls, Montana

James M. Ramlow, Kaufman, Vidal & Hileman ; Kalispell, Montana

_____

Submitted on Briefs: September 2, 1999

Decided: November 23, 1999

Filed:


_____

Clerk

Justice Terry N. Trieweiler delivered the opinion of the Court.

1. ¶ The Plaintiffs, Snow Country Construction, Inc., Michael Roessman and Pamela Roessman, brought this action in the District Court for the Eleventh Judicial District in Flathead County to recover damages for breach of a covenant not to compete from the Defendants, Michael Laabs, Debra Laabs and Laabs & Associates, Inc. The District Court awarded summary judgment to the Defendants. Plaintiffs appeal from the judgment of the District Court. We reverse and remand for further proceedings.

2. ¶ The following issue is dispositive:

3. ¶ Did the District Court err by granting summary judgment to Defendants based on its conclusion that the covenant not to compete was not enforceable pursuant to §§ 28-2-703 and -704, MCA?

## FACTUAL BACKGROUND

4. ¶ Prior to May 1994, Plaintiff Michael Roessman was employed by Snow Country Construction, Inc., a closely held family corporation owned by Michael and Debra Laabs. Snow Country Construction, Inc., is a small construction company, whose business is primarily building expensive custom homes.

5. ¶ In 1994, Michael Laabs informed Michael Roessman that he was interested in leaving the construction industry and subsequently offered to sell Snow Country Construction, Inc. to Michael Roessman. The Laabs and the Roessmans negotiated at length concerning the purchase of the company, and specifically over the terms of a covenant not to compete. Because Michael Laabs had close relationships with many of the company's clientele, the Roessmans felt it was imperative, for Snow Country Construction's continued success, that the Laabs enter into a covenant not to compete with the company.

6. ¶ On May 31, 1994, the Laabs and the Roessmans executed a Stock Purchase Agreement for Snow Country Construction, Inc. Pursuant to the agreement, Roessmans purchased 100 percent of Snow Country Construction Inc.'s stock. The sale constituted a complete transfer and conveyance of all of the Laabs' right, title and interest in and to Snow Country Construction, Inc. Additionally, the agreement contained a covenant not to compete, which restricted the Laabs from serving as general contractors for residential construction in Flathead and Lake Counties for a period of seven years, and from performing any construction for any prior, existing or referred clients of Snow Country Construction.

7. ¶ On May 8, 1998, the Plaintiffs filed a complaint alleging that the Defendants have repeatedly breached the covenant not to compete by continuing in the construction trade in Flathead and Lake Counties and by performing construction projects for prior, or existing clients of Snow Country Construction, Inc. Plaintiffs filed an amended complaint on May 12, 1998. On July 8, 1998, Defendants filed a motion for summary judgment based on the Defendants' affirmative defense that the covenant not to compete is void because it violates public policy. The District Court granted Defendants' motion for summary judgment on January 15, 1999 based on the District Court's conclusion that the covenant not to compete was unenforceable.

Plaintiffs appeal the District Court's Order granting summary judgment.

## STANDARD OF REVIEW

8. ¶ Our standard of review on appeal from summary judgment orders is de novo. *See Motarie v. Northern Montana Joint Refuse Disposal Dist.* (1995), 274 Mont. 239, 242, 907 P.2d 154, 156. We review a district court's summary judgment to determine whether it was correctly decided pursuant to Rule 56, M.R.Civ. P., which provides that summary judgment is only appropriate where there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law.

## DISCUSSION

9. ¶ Did the District Court err when it granted summary judgment to Defendants based on its conclusion that the covenant not to compete was not enforceable pursuant to §§ 28-2-703 and -704, MCA?

10. ¶ The Plaintiffs contend that the covenant not to compete is enforceable pursuant to Montana's statutory provision which expressly allows a covenant not to compete when the good will of a business has been sold. Sections 28-2-703 and -704, MCA, provide:

Any contract by which anyone is restrained from exercising a lawful profession, trade, or business of any kind, otherwise than is provided for by 28-2-704 or 28-2-705, is to that extent void.

Section 28-2-703, MCA.

(1) One who sells the goodwill of a business may agree with the buyer to refrain from carrying on a similar business within the areas provided in subsection (2) so long as the buyer or any person deriving title to the goodwill from him carries on a like business therein.

Section 28-2-704, MCA.

11. ¶ The Laabs argue that because the sale of Snow Country Construction, Inc., was the sale of stock as opposed to the sale of assets, the exception found at § 28-2-704, MCA, does not apply. The Laabs assert that shareholders do not own the good will

of a business, which belongs to the corporation, and that therefore, when shares of stock are bought and sold by individuals, the good will itself is not transferred.

12. ¶ Section 28-2-704, MCA, was modeled after § 1674 (now § 16601) of the California Civil Code. We have previously determined that our interpretation of this section will be guided by the construction given it by the Supreme Court of California. *Treasure Chem., Inc. v. Team Laboratory Chem. Corp.* (1980), 187 Mont. 200, 204, 609 P.2d. 285, 287. In 1899, the Supreme Court of California addressed the issue of whether the good will exclusion contained in section 1674 of the California Civil Code is applicable to a stock sale. *Merchants' Ad-Sign Co. v. Sterling* (1899), 124 Cal. 429, 57 P. 468. The court held that the § 1674 exclusion did not apply to a stock sale, stating that: "[d]efendant, as a stockholder, did not and could not transfer the good will of the corporation . . . . The element of good will, therefore, is not present in the transaction." *Merchants' Ad-Sign Co.*, 124 Cal. at 433, 57 P. at 469.

13. ¶ Section 1674 was subsequently amended in 1945, and now includes language which extends the good will exception to a shareholder selling all of his shares of stock. In *Boseley Medical Group v. Abramson, M.D.* (1984), 161 Cal. App. 3d 284, 207 Cal. Rptr. 477, the California court explained the subsequent amendment of § 1674, stating:

The purpose of the 1945 amendment to section 16601 [previously § 1674] is contained in a letter from sponsoring Senator Quinn and a memorandum prepared for the committee. . . . The memorandum points out that the court's interpretation in *Merchants' Ad-Sign Co. v. Sterling*, supra, 124 Cal. 429, 57 P. 468, was very technical, and was based on the fact that when the predecessor sections to Business and Professions Code sections 16600, 16601 and 16602 were enacted, "the small trading corporation was practically unknown and partnership was the vogue . . . ."

*Boseley Med. Group,* 161 Cal. App. 3d at 289, 207 Cal. Rptr. at 480. Thus, the California Supreme Court's interpretation of § 1674 in *Merchants' Ad-Sign Company*, does not reflect modern business reality. Therefore, we decline to follow California's statutory interpretation of § 1674 as set forth in *Merchants' Ad-Sign Company*.

14. ¶ Several other jurisdictions have addressed this same issue and have concluded that there is no substantive difference between the sale of all of a company's stock and the sale of a company's good will in some other form. *See Ward v. Midcom, Inc.*

(1998 S.D.), 575 N.W.2d 233; *Key v. Perkins* (1935 Okla.), 46 P.2d 530. In a recent case, the Supreme Court of North Dakota construed a similar good will exclusion statute stating:

Where one sells his stock he necessarily disposes of his interest in the good will of the business conducted by the corporation to the same extent as he parts with his interest in any other property of the corporation. And where, as in the instant case, he disposes of all his stock and severs his connection with a business that had been in a measure dependent for its success upon his skill or ability and contracts at the same time not to re-engage in the same business within an area permitted by the statute, he has, in fact, sold the good will within the exception, and the contract is valid.

*Earthworks, Inc. v. Sehn* (1996 N.D.), 553 N.W.2d 490, 494 (citing *Bessel v. Bethke* (1927 N.D.), 215 N.W. 868, 869-870).

15. ¶ Moreover, in the instant case, the Stock Purchase Agreement specifically contemplates the transfer of good will in the stock sale. Paragraph 9 of the Stock Purchase Agreement provides:

The parties acknowledge and agree that, while no specific allocation of the purchase price is made for good will, that there is, nonetheless, a substantial value to the name and reputation of Seller and the corporation.

Thus, the Laabs' argument that the good will exclusion of § 28-2-704, MCA, does not apply because there was no transfer of good will in the stock sale is not well taken.

16. ¶ Section 1-3-219, MCA, provides that "[t]he law respects form less than substance." To hold that the good will exclusion of § 28-2-704, MCA, applies to an asset sale but not to a stock sale would effectively exalt form over substance. Because we conclude that in this context there is no substantive difference between a sale of all of a company's stock and the sale of a company's assets, we must further conclude that the good will exception of § 28-2-704, MCA, applies to a stock sale as well as an asset sale. For these reasons, we conclude that the Defendants were not entitled to summary judgment as a matter of law. Accordingly, we reverse the judgment of the District Court and remand for further proceedings consistent with

this opinion.

/S/ TERRY N. TRIEWEILER

We Concur:

/S/ J. A. TURNAGE

/S/ KARLA M. GRAY

/S/ WILLIAM E. HUNT, SR.

/S/ W. WILLIAM LEAPHART