[No. B134869. Second Dist., Div. Three. Jan. 30, 2001.]

HILL MEDICAL CORPORATION, Plaintiff and Appellant, v.
RUSSELL R. WYCOFF, Defendant and Appellant.

## COUNSEL

Parker, Milliken, Clark, O'Hara & Samuelian, Frank Albino and Gary Ganchrow for Plaintiff and Appellant.

Gibson, Dunn & Crutcher, Charles C. Ivie and Antoinette DeCamp for Defendant and Appellant.

## OPINION

**ALDRICH, J.—**

### INTRODUCTION

In this case we are called upon to determine if a covenant not to compete between Hill Medical Corporation (Hill Medical) and Dr. Russell R. Wycoff (Dr. Wycoff) is void pursuant to Business and Professions Code section 16600. Hill Medical has sought an injunction to enforce the covenant against Dr. Wycoff, claiming it falls within the narrow exception set forth in Business and Professions Code section 16601.[1]

The trial court denied Hill Medical's request for an injunction, concluding the covenant not to compete was unenforceable under section 16600 and did not fall within the exception of section 16601. We agree with the trial court. We conclude the noncompetition provision was void under section 16600 and did not comply with the requirements of section 16601. We affirm the

---

[1]Unless otherwise designated, hereinafter all statutory references are to the Business and Professions Code.

judgment in favor of Dr. Wycoff. In light of this conclusion, we need not address other issues raised by the parties.[2]

FACTUAL AND PROCEDURAL BACKGROUND

1. *Facts.*

 a. *Preliminary facts.*

Hill Medical is a professional California corporation of radiologists. It provides services in the field of radiology to hospitals, clinics, medical offices, and other health institutions and facilities. It employs licensed physicians in the field of radiology and associated medical-imaging disciplines.

Dr. Wycoff is a physician and surgeon specializing in the practice of radiology. He became a Hill Medical employee in 1976 and a shareholder in 1978. In 1978, Dr. Wycoff purchased 100 shares of Hill Medical stock in exchange for a $10,200 promissory note.

At all times relevant to this dispute, Hill Medical's common stock was owned by 14 radiologists, including Dr. Wycoff, each of whom worked for Hill Medical under written employment agreements.

Throughout the years, Dr. Wycoff received distributions reflecting his share of the corporation's profits. From 1996 through 1999, Dr. Wycoff received a total of $98,349 in such payments. For the 1998 calendar year, Hill Medical's gross receipts were approximately $12.5 million.

 b. *The Stock Redemption Agreement.*

In 1996, Dr. Wycoff entered into an "amended and restated employment agreement" and a "stock redemption agreement" with Hill Medical.[3] According to the stock redemption agreement, in the event of a "buyout event,"

---

[2]Hill Medical also challenges the trial court's decision with regard to the scope of the covenant not to compete. Dr. Wycoff, in a cross-appeal, raises an estoppel issue.

[3]The original employment agreement and the original stock redemption agreement were signed in 1982. Thereafter, amendments were made as reflected in 1996 documents. In reviewing both the 1982 and the 1996 agreements, we find the noncompetition provisions virtually identical with the significant exception that in the 1996 agreement, the geographical limitation is expanded from one-half to seven and one-half miles.

Dr. Wycoff did not sign the 1996 documents. The trial court held Dr. Wycoff was estopped to deny that he was bound by them. For purposes of discussion, we assume there was substantial evidence to support the trial court's factual determinations regarding the estoppel issue. (*Conservatorship of Kevin M.* (1996) 49 Cal.App.4th 79, 92 [56 Cal.Rptr.2d 765]

which was defined to include the end of Dr. Wycoff's employment, he was required to sell his stock back to the corporation and Hill Medical was required to repurchase the stock, at a price measured by net book value, i.e., assets minus liabilities. Hill Medical did not carry goodwill as an asset on its books.

The stock redemption agreement also contained a covenant not to compete. According to this noncompetition provision, upon a "buyout event," Dr. Wycoff would be barred from practicing radiology within a seven-and-one-half-mile radius from any Hill Medical Facility for three years.[4]

c. *Other facts.*

On June 21, 1998, Dr. Wycoff tendered his resignation to the corporation's board of directors. The resignation was accepted.

On November 4, 1998, Dr. Wycoff gave a six-month notice of his intention to terminate his employment with Hill Medical.

Dr. Wycoff intended to practice radiology at 638 West Duarte Road in Arcadia, California (Duarte Facility). The Duarte Facility was located within seven and one-half miles of Huntington Memorial Hospital. Hill Medical practiced out of Huntington Memorial Hospital.

In 1999, the repurchase value of Dr. Wycoff's 100 shares under the book value valuation in the stock redemption agreement was approximately $217,000. This figure did not include any component of goodwill.

2. *Procedure.*

On April 5, 1999, Hill Medical sued Dr. Wycoff seeking injunctive relief and enforcement of the covenant not to compete. The complaint also sought declaratory relief.

---

[estoppel question of fact; trial court's findings binding on appellate court if supported by substantial evidence].) Since, as we discuss *infra*, we find the 1996 agreement violates section 16600 and does not fall within the exception provided in section 16601, we need not reach the estoppel argument raised by Dr. Wycoff.

[4] The provision read: "Employee covenants and agrees that, upon Employer's repurchase of the Shares hereunder, Employee will not, for a period of three (3) years from and after the date of such repurchase, engage in the practice of the specialty of radiology or any associated medical imaging discipline in any way, directly or indirectly, whether as a sole practitioner, partner, employee or shareholder or a professional corporation or otherwise, within a seven and one-half (7½) mile radius of any hospital, clinic, office, institution, or other facility maintained, serviced or operated by Employer at the time of such repurchase, so long as Employer continues during said three-year period to maintain, service or operate such hospital, clinic, office, institution or other facility."

Two months later, a two-day court trial occurred. The trial court denied the request for a permanent injunction. The trial court held that "1. . . . Wycoff is estopped to deny that he is bound by, and the parties are bound by, the . . . 1996 Employment Agreement and Stock Redemption Agreement. . . . ; [¶] 2. The Covenant Not to Compete in the Stock Redemption Agreement is unlawful, unreasonable in scope, and unenforceable; and [¶] 3. . . . Wycoff is not obligated to refrain from competition with [Hill Medical] in any otherwise lawful manner."

In so ruling, the trial court found the following. The "Employment Contract and the Share Repurchase Agreement are a package deal and not two separate agreements." The noncompetition covenant was invalid under section 16600 and it did not fall into the exception provided under section 16601. As in *Bosley Medical Group v. Abramson* (1984) 161 Cal.App.3d 284 [207 Cal.Rptr. 477], the clause was devised to accomplish what the law prohibits. The repurchase price was "certainly not fair market value. It certainly didn't include anything that one might consider . . . good will."

The trial court further found that Hill Medical had not established the reasonableness of the noncompetition provision, in geographical scope.

Judgment was entered estopping Dr. Wycoff from denying the covenant not to compete and denying Hill Medical's request for an injunction. Hill Medical appealed from that portion of the judgment that denied the injunction. Dr. Wycoff cross-appealed from that part of the judgment estopping him from denying the applicability of the 1996 covenant not to compete.

### DISCUSSION

1. *The Superior Court Properly Held That the Noncompetition Provision Under the 1996 Agreement Was Invalid Under Section 16600.*

 Hill Medical contends the judgment must be reversed because it was entitled to an injunction. Hill Medical bases this contention on the argument that the trial court erred in concluding that the covenant not to compete was unenforceable. This contention is unpersuasive.

 At common law, and in many states, restraints on the practice of a profession, trade, or business were valid, if reasonable. (*Bosley Medical Group v. Abramson, supra,* 161 Cal.App.3d at p. 288.) In contrast, however, California has settled public policy in favor of open competition. (*Howard v. Babcock* (1993) 6 Cal.4th 409, 416 [25 Cal.Rptr.2d 80, 863 P.2d 150, 28 A.L.R.5th 811]; *Pacific Wharf etc. Co. v. Dredging Co.* (1920) 184 Cal. 21,

24-25 [192 P. 847] ["The rule making void contracts in restraint of trade is not based upon any consideration for the party against whom the relief is sought, but upon considerations of sound public policy. [Citation.]"]; *Golden State Linen Service, Inc. v. Vidalin* (1977) 69 Cal.App.3d 1, 12-13 [137 Cal.Rptr. 807].) California codified its public policy and rejected the common law "rule of reasonableness" in 1872, upon the enactment of the Civil Code. (Former Civ. Code, § 1673, repealed and enacted as Bus. & Prof. Code, § 16600, Stats. 1941, ch. 526, § 1, p. 1834; *Bosley Medical Group v. Abramson, supra,* 161 Cal.App.3d at p. 288.)

Section 16600 presently sets out the general rule in California—covenants not to compete are void. *(South Bay Radiology Medical Associates v. Asher* (1990) 220 Cal.App.3d 1074, 1080 [269 Cal.Rptr. 15].) "[T]his provision [is] an expression of public policy to ensure that every citizen shall retain the right to pursue any lawful employment and enterprise of their choice." *(Metro Traffic Control, Inc. v. Shadow Traffic Network* (1994) 22 Cal.App.4th 853, 859 [27 Cal.Rptr.2d 573].) Section 16600 reads: "Except as provided in this chapter, every contract by which anyone is restrained from engaging in a lawful profession, trade, or business of any kind is to that extent void."

■ The noncompetition provisions of the 1996 stock redemption agreement fall squarely within the proscription of section 16600. The agreement provides that upon the occurrence of a "buyout event," Dr. Wycoff is prohibited from engaging "in the practice of the specialty of radiology or any associated medical imaging discipline in any way, directly or indirectly . . . within a seven and one-half (7½) mile radius of any hospital, clinic, office, institution, or other facility maintained, serviced or operated by [Hill Medical]," for a period of three years. (See fn. 4, *ante.*) As Dr. Wycoff's professional practice consists solely of providing radiology and associated medical imaging services, the provision effectively excludes him from the practice of his profession and is thus void. (§ 16600.)

*2. The Trial Court Correctly Found Section 16601 Inapplicable to the Noncompetition Clause of the 1996 Agreement.*

■ Section 16601 provides one of the narrow exceptions to section 16600. *(Kolani v. Gluska* (1998) 64 Cal.App.4th 402, 407 [75 Cal.Rptr.2d 257].)[5] Pursuant to section 16601, in certain defined circumstances, persons who sell the goodwill of a business may agree to refrain from carrying on a

---

[5]Section 16601 presently reads in full: "Any person who sells the goodwill of a business, or any shareholder of a corporation selling or otherwise disposing of all his shares in said corporation, or any shareholder of a corporation which sells (a) all or substantially all of its operating assets together with the goodwill of the corporation, (b) all or substantially all of the

similar business. Section 16601 reflects that when the goodwill of a business is sold, it would be " 'unfair' for the seller to engage in competition which diminishes the value of the asset he [or she] sold." (*Monogram Industries, Inc. v. Sar Industries, Inc.* (1976) 64 Cal.App.3d 692, 698 [134 Cal.Rptr. 714]; accord, *Vacco Industries, Inc. v. Van Den Berg* (1992) 5 Cal.App.4th 34, 48 [6 Cal.Rptr.2d 602].)[6]

In limited circumstances, section 16601 permits purchasers of a business to protect themselves through a covenant not to compete. (*Hilb, Rogal & Hamilton Ins. Services v. Robb* (1995) 33 Cal.App.4th 1812, 1824 [39 Cal.Rptr.2d 887]; accord, *Vacco Industries, Inc. v. Van Den Berg, supra,* 5 Cal.App.4th at p. 48.)

As originally enacted, section 16601 and its predecessor statute only applied to the sale of a business. (Former Civ. Code, § 1674, repealed, amended, and reenacted as Bus. & Prof. Code, § 16601, Stats. 1941, ch. 526, § 1, p. 1834, as amended by Stats. 1941, ch. 845, § 1, p. 2427.) Arguments that this limited statutory exception to the firmly entrenched policy of open commercial activities should apply to the sale of corporate shares were rejected. (*Merchants' Ad-Sign. Co. v. Sterling* (1899) 124 Cal. 429 [57 P. 468].) It was reasoned that the goodwill of the corporation was the property of the corporate entity, which could not be transferred by the shareholder. (*Id.* at pp. 432, 433; *Golden State Linen Service, Inc. v. Vidalin, supra,* 69 Cal.App.3d at p. 10 ["[G]ood will of a business may not be owned by anyone other than the owner of the business. [Citations.]"].) The argument that goodwill was an element in the value of the stock was also rejected. (*Merchants' Ad-Sign Co. v. Sterling, supra,* 124 Cal. at p. 432.)

Subsequently, however, the Legislature recognized that customers or clients might also develop personal relationships with stockholders running a

operating assets of a division or a subsidiary of the corporation together with the goodwill of such division or subsidiary, or (c) all of the shares of any subsidiary, may agree with the buyer to refrain from carrying on a similar business within a specified county or counties, city or cities, or a part thereof, in which the business so sold, or that of said corporation, division, or subsidiary has been carried on, so long as the buyer, or any person deriving title to the goodwill or shares from him, carries on a like business therein. For the purposes of this section, 'subsidiary' shall mean any corporation, a majority of whose voting shares are owned by the selling corporation."

Sections 16600 and 16601 do not exclude professional medical corporations. (Cf. *Howard v. Babcock, supra,* 6 Cal.4th at pp. 417-418.)

[6]Goodwill can be defined simply as the "expectation of continued public patronage." (§ 14100; *Baker v. Pratt* (1986) 176 Cal.App.3d 370, 380 [222 Cal.Rptr. 253].) It is "property of an intangible nature and is a thing of value. [Citation.] When it is sold it is not the patronage of the general public which is sold, but that patronage which has become an asset of the business. [Citation.]" (*In re Marriage of Foster* (1974) 42 Cal.App.3d 577, 582 [117 Cal.Rptr. 49], fn. omitted.)

business in the form of a corporation. The sellers and buyers of shares in such entities might have the same concerns, upon the transfer of corporate stock, as the sellers and buyers of a business. The customers might " 'have become used to and appreciate the personal service of the vendor stockholder. . . .' In such cases, 'the ability of the vendor stockholder to validly undertake that he [or she] will not engage in competition with the corporation, of which he [or she] has ceased to be a stockholder, may well mean that he [or she] can not get the price for his [or her] shares which he [or she] might if such a contract were sanctioned by the law.' " (*Bosley Medical Group v. Abramson, supra,* 161 Cal.App.3d at pp. 289-290.) In 1945, section 16601 was amended to permit owners of small corporations to agree not to compete in connection with selling or disposing of their entire interest in that corporation. (*Bosley Medical Group v. Abramson, supra,* at p. 289; Stats. 1945, ch. 671, § 1, p. 1341.)[7]

Section 16601 presently reads in pertinent part: "Any person who sells the goodwill of a business, or any shareholder of a corporation selling or otherwise disposing of all his shares in said corporation . . . may agree with the buyer to refrain from carrying on a similar business within a specified county or counties, city or cities, or a part thereof, in which the business so sold, or that of said corporation, . . . has been carried on, so long as the buyer, or any person deriving title to the goodwill or shares from him, carries on a like business therein."

■ However, in order to uphold a covenant not to compete pursuant to section 16601, the contract for sale of the corporate shares may not circumvent California's deeply rooted public policy favoring open competition. The transaction must clearly establish that it falls within this limited exception. The practical effect of the transaction and the economic realities must be considered. (Cf. *Hilb, Rogal & Hamilton Ins. Service v. Robb, supra,* 33 Cal.App.4th at pp. 1823-1825 [merger with exchange of shares constitutes "selling or otherwise disposing" of shares].) In order to restrain the seller's profession, trade, or business, there must be a clear indication that in the sales transaction, the parties valued or considered goodwill as a component of the sales price, and thus the share purchasers were entitled to protect themselves from "competition from the seller which competition would have the effect of reducing the value of the property right that was acquired." (*Monogram Industries, Inc. v. Sar Industries, Inc., supra,* 64 Cal.App.3d at p. 701; accord, *Hilb, Rogal & Hamilton Ins. Services v. Robb, supra,* 33 Cal.App.4th at p. 1825.)

When sellers transfer all of their corporate shares, which constitutes only a fraction of the corporate shares, the concerns are the same—did the

---

[7]Other amendments to section 16601 were made in 1963. (Stats. 1963, ch. 597, § 1, p. 1476.)

transaction take into account corporate goodwill? The sale of the corporate fractional interest must involve "a substantial interest in the corporation so that the owner, in transferring 'all' of his [or her] shares, can be said to transfer the goodwill of the corporation." (*Bosley Medical Group v. Abramson, supra,* 161 Cal.App.3d at p. 290.) Simply selling shares to an individual vendee or back to the corporation does not necessarily demonstrate that goodwill is part of the agreement. To hold otherwise would result in the enforceability of all covenants not to compete involving the sale of all of the vendors' shares, in violation of the purposes behind sections 16600 and 16601.

We can foresee situations in which the parties have not allocated a specific portion of the purchase price to goodwill, and yet the parties recognized that goodwill was part and parcel of the transaction involving a substantial corporate interest. (Cf. *Hilb, Rogal & Hamilton Ins. Services v. Robb, supra,* 33 Cal.App.4th at p. 1825 [agreement indicates purchaser considered company's goodwill as valuable asset].) In such situations, the transaction would meet the requirements of section 16601. In analyzing whether parties had intended goodwill to be a part of the consideration in the sale of stock, all aspects of the sales arrangement should be evaluated. For example, the entire structure of the transaction, including the sales price, might suggest that it can be said that goodwill had transferred. (Cf. *All Points Traders, Inc. v. Barrington Associates* (1989) 211 Cal.App.3d 723, 732 [259 Cal.Rptr. 780].) Additionally, such a conclusion might be reached because the seller has a significant economic investment. Evidence that the amount paid to the departing or selling shareholder approximates the amount the shareholder was expected to lose, as a result of the covenant not to compete, may be strong indicia that the sales price was intended to include goodwill so as to invoke the exception of section 16601. Further, if fair market value is paid for the shares, it may indicate that goodwill is part of the transaction, as an inference can be made that the price includes a value for goodwill. (*Baker v. Pratt, supra,* 176 Cal.App.3d at p. 380 ["A going business has a value over and above the aggregate value of the tangible property employed in it, and such goodwill is an indispensable element of the fair market value of such a business. [Citation.]"].)[8]

a. *The Bosley and Vacco Cases.*

*Bosley Medical Group v. Abramson, supra,* 161 Cal.App.3d 284, a case from this division, is instructive. In *Bosley,* Norton R. Abramson (Dr.

---

[8]By this conclusion, we are not forcing corporations to adopt any particular repurchase formula. Parties are free to chose from the many ways utilized to value shares of a closed corporation. (See generally Ballantine & Sterling, Cal. Corporation Laws (4th ed. 2000) § 63.05, p. 4-96.4 et seq.) Further, we note that in some situations, a book value formula may include goodwill as an asset. (*Id.* at § 63.05, p. 4-102.)

Abramson) was a medical doctor working for Bosley Medical Group (the Medical Group) under two agreements. Under these agreements, Dr. Abramson purchased 9 percent of the Medical Group shares at a price of $10,000, to be paid through a promissory note. He agreed to resell the shares when he left the Medical Group, which would be purchased by the Medical Group and L. Lee Bosley, M.D. (Dr. Bosley), its president and director. At such time, Dr. Abramson would be paid the purchase price, plus 10 percent a year. (*Id.* at p. 287.) Dr. Bosley owned at least 73 percent of the stock in the Medical Group. (*Ibid.*) For the next two and one-half years, Dr. Abramson worked for the Medical Group. During those years, Dr. Bosley received approximately 95 percent of the group's $1,728,000 net receipts, via salary and pension contributions. (*Ibid.*)

*Bosley Medical Group v. Abramson, supra,* 161 Cal.App.3d 284, discussed the reason for the amendment to section 16601 that permitted its application to the sale of corporate shares. *Bosley* rejected a literal interpretation of section 16601 that permitted the enforcement of a covenant not to compete made in conjunction with the sale of "all" of a shareholders shares. *Bosley* reasoned that "[l]iterally applied, section 16601 would permit a major public corporation to require any employee to purchase one of several million shares and to enter into an agreement not to work for a competitor—an absurd result, and contrary to this state's policy prohibiting such agreements. Even on the facts of this case, a literal interpretation of section 16601 leads to a mischievous and absurd result." (161 Cal.App.3d at p. 291.) "[Dr. Abramson] was required, not permitted, to purchase the shares. . . . Moreover, . . . [t]he overwhelming majority of those shares was owned by [Dr.] Bosley and control of the corporation remained at all times with [Dr.] Bosley. Nor could [Dr. Abramson] significantly benefit from the payment of dividends or a capital gain in the value of the stock. The interest he paid on the promissory note exceeded the amount he received in dividends; he received the purchase price plus only 10 percent when he left the group. [¶] . . . [T]he stated purpose of the stock purchase agreement[, which was to add a financial incentive for Dr. Abramson's endeavors, makes little sense in that Dr. Abramson received in compensation an amount approximating the amount he expected to receive]. Moreover, the 'professional relationship' [was controlled by the contracts, that] permitted [Dr. Bosley and the Medical Group] to fire [Dr. Abramson] on five days' notice." (*Ibid.*)

*Bosley Medical Group v. Abramson, supra,* 161 Cal.App.3d 284, concluded that the stock purchase agreement was a sham devised to circumvent California's policy against such agreements as expressed in section 16600. Thus, the covenant not to compete was unenforceable and void. (161 Cal.App.3d at pp. 288, 291-292.)

*Vacco Industries, Inc. v. Van Den Berg, supra,* 5 Cal.App.4th 34, another case from this division, demonstrates when a noncompetition clause is enforceable. In *Vacco,* Tony Van Den Berg (Van Den Berg) had worked his way up the corporate ladder until he became operations manager and a corporate officer of Vacco Industries, Inc., a California corporation (Vacco). Ultimately, Van Den Berg acquired 3 percent of Vacco's outstanding shares of stock. (*Id.* at pp. 40-41.) Vacco entered into a contract with a second company, Emerson Electric Co., a Missouri corporation (Emerson), whereby Emerson was to purchase all of Vacco's stock, for a total purchase price of approximately $23 million. In anticipation of the sale, Vacco "entered into employment contracts with a number of key employees, and separate non-competition agreements with 12 major shareholders." (*Id.* at p. 42.) Van Den Berg was one of the shareholders to execute such an agreement. He "sold all of his shares to Emerson and was paid the sum of $500,000." (*Id.* at p. 43.) We held that the covenant not to compete was enforceable. (*Id.* at pp. 47-49.) We rejected Van Den Berg's argument that because he only held 3 percent of the stock and received only $500,000 of the $23 million purchase price, that he was not a "substantial shareholder." (*Id.* at pp. 48-49.) "[T]here was nothing sham about the purchase of Van Den Berg's stock. The purchase was not a device to impose an otherwise illegal restraint upon his future commercial activities. . . . Van Den Berg was, in the context of this transaction, a substantial shareholder. He was the ninth largest shareholder in the corporation and was one of its principal officers. The purchase of his stock was essential to Emerson's stated goal of acquiring *all* of Vacco's stock." (*Ibid.*)

b. *The Covenant Not to Compete Between Hill Medical and Dr. Wycoff Was Unenforceable.*

We turn to the facts before us to determine if the covenant not to compete falls within the limited exception of section 16601. We are not determining whether or not the consideration was adequate. (Cf. *Bosley Medical Group v. Abramson, supra,* 161 Cal.App.3d at p. 292.) Rather, we are examining the facts, as found by the trial court, to determine if the covenant not to compete is void. To the extent our analysis is determined by the trial court's factual findings, we indulge all inferences in favor of the findings if those findings are supported by substantial evidence. (*Scofield v. Critical Air Medicine, Inc.* (1996) 45 Cal.App.4th 990, 996, fn. 2 [52 Cal.Rptr.2d 915].)

The repurchase price is an indicator as to whether business goodwill was a factor in the purchase of Dr. Wycoff's shares by Hill Medical. The repurchase price of $217,000 was not fair market value. It represented Hill Medical's assets minus liabilities. The price did not include any payment for goodwill. There was no suggestion that goodwill was considered in arriving

at the repurchase price. According to testimony, the appropriate valuation for a medical business and radiology practice was one to three times the gross annual receipts. Hill Medical's gross receipts for the year 1998 were approximately $12.5 million. One to three times this amount would have been between $12.5 million and $37.5 million. Dr. Wycoff's 1/14th share of that valuation would have been a sum far exceeding the $217,000 he was to receive upon the sale. While the repurchase formula might have had the advantage of simplicity, the trial court found there was nothing to indicate that goodwill was part of the repurchase transaction.[9]

The $217,000 repurchase price did not show that Dr. Wycoff significantly benefited from an appreciation in the value of the stock over the 21 years he held the shares. In light of the value of the corporation, he had no real economic investment. Further, there is no indication Dr. Wycoff ever purchased goodwill. As Hill Medical concedes, when Dr. Wycoff purchased his shares, the buy-in formula did not include a separate valuation for goodwill.

Dr. Wycoff owned only 7 percent of the shares. The transfer did not involve a substantial interest such that it could be said that the transfer of goodwill was considered. There were no facts to demonstrate that the parties considered the effect of the covenant not to compete upon Dr. Wycoff's future earning potential. There are no facts to demonstrate that Dr. Wycoff was compensated to relinquish his rights to continued patronage from patients and doctors with whom he had developed a personal relationship.

All Hill Medical shareholders were employees and no doctor could be an employee without being a shareholder.[10] Dr. Wycoff was not in "the inner circle of people that made decisions." Dr. Wycoff was "not in the business end of that group." From 1995, until his resignation from the board in 1998, Dr. Wycoff was not an active member of the board, a chair of a committee, nor had he presented any agenda items to the board. He did not control the business of the entity.

There was substantial evidence supporting the trial court's finding that the covenant not to compete did not fall within the exception of section 16601.[11]

Section 16600 provides that a contract "by which anyone is restrained from engaging in a lawful profession, trade, or business of any kind is *to that*

[9]Hill Medical notes that in reaching its conclusion, the trial court stated the repurchase price "certainly was not fair market value." Hill Medical suggests that by this comment, the trial court mandated a particular repurchase formula. We disagree. The trial court did not conclude that only a "fair market" valuation would have rendered the agreement enforceable. Rather, according to the trial court, the fact that fair market value was not used was merely one fact it considered in reaching its conclusion.

[10]The statutes restrict who can be a shareholder of a medical corporation. (Bus. & Prof. Code, § 2408; Corp. Code, §§ 13401.5, 13406, 13407.)

[11]We reject any suggestion that we should analogize this case to the purchase of a partnership share. The goodwill requirements of section 16601 have never been read into

*extent void.*" (Italics added.) Based upon the italicized portion of this statute and various cases, Hill Medical urges that we save the covenant not to compete by restructuring it. However, this is not a situation in which an otherwise valid covenant covers an unreasonably large geographical area or is unreasonably long in duration. Since there has been no compensation for goodwill, it is impossible to rewrite this void covenant. To rewrite the covenant would undermine California's public policy of open competition as embedded in section 16600. (Cf. *Kolani v. Gluska, supra,* 64 Cal.App.4th at pp. 407-408.)[12]

The covenant not to compete was unenforceable.

DISPOSITION

The judgment is affirmed. Costs on appeal are awarded to Dr. Wycoff.

Klein, P. J., and Croskey, J., concurred.

---

section 16602, the statute addressing the purchase of partnership shares. (*South Bay Radiology Medical Associates v. Asher, supra,* 220 Cal.App.3d at pp. 1083-1084.)

Hill Medical points to *Franz v. Bieler* (1899) 126 Cal. 176, *Stephens v. Bean* (1924) 65 Cal.App. 779 [224 P. 1022], *Mahlstedt v. Fugit* (1947) 79 Cal.App.2d 562 [180 P.2d 777], *Dillon v. Sumner* (1957) 153 Cal.App.2d 639 [315 P.2d 84], *Swenson v. File* (1970) 3 Cal.3d 389 [90 Cal.Rptr. 580, 475 P.2d 852], and *Roberts v. Pfefer* (1970) 13 Cal.App.3d 93 [91 Cal.Rptr. 308] (medical partnership). These cases do not involve situations in which the sale of all corporate shares did not include compensation for goodwill.

We also find unpersuasive Hill Medical's citation to *Snow Country Const., Inc. v. Laabs* (1999) 296 Mont. 520 [989 P.2d 847] (seller not entitled to summary judgment; purchaser bought 100 percent of shares in construction business; purchase agreement specifically contemplated transfer of goodwill; in context, there was no substantive difference between sale of company stock and sale of assets) and to *Meteor Industries v. Metalloy Industries* (1989) 149 A.D.2d 483 [539 N.Y.S.2d 972] (defendant owned 50 percent of business and was its president and member of board of directors; shareholder agreement address company's three principals; goodwill was intended to be transferred with sale of shares, albeit no specific value was prescribed to it).

[12]As noted above, the trial court alternatively concluded that the noncompetition clause was unreasonable in scope. In light of our holding, we need not address Hill Medical's contention related to this finding.