Filed 8/30/23  Frazer v. Rendon CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| FRAZER, LLP, | |
| Plaintiff and Appellant, | G061846 |
| v. | (Super. Ct. No. 30-2019-01119773) |
| LUIS A. RENDON, | O P I N I O N |
| Defendant and Respondent. | |

Appeal from a judgment of the Superior Court of Orange County, Melissa R. McCormick, Judge.  Affirmed.

Atkinson, Andelson, Loya, Ruud & Romo, Edward C. Ho, Daniel M. Hargis and Mae G. Alberto for Plaintiff and Appellant.

Snell & Wilmer, Jeffrey M. Singletary and Jing (Jenny) Hua for Defendant and Respondent.

\*          \*          \*

Generally, "every contract by which anyone is restrained from engaging in a lawful profession, trade, or business of any kind is to that extent void." (Bus. & Prof. Code, § 16600.)[1] However, a limited exception allows a former partner to "agree that he or she will not carry on a similar business within a *specified geographic area* where the partnership business has been transacted." (§ 16602, subd. (a), italics added.)

Frazer, LLP (Frazer) is an accounting firm that sued its former partner Luis A. Rendon. Frazer alleged Rendon breached two clauses in the Frazer partnership agreement: a noncompete clause (by doing accounting work for former Frazer clients) and a nonsolicitation clause (by hiring a Frazer employee).

Rendon filed a motion for summary adjudication arguing the partnership agreement provisions are void as a matter of law because the noncompete clause does not specify a geographic area, and the nonsolicitation clause violates California's public "policy in favor of open competition and employee mobility." (*Edwards v. Arthur Andersen LLP* (2008) 44 Cal.4th 937, 945–946 (*Edwards*).)

The trial court granted Rendon's motion for summary adjudication. We agree with the trial court's ruling and affirm the judgment.

I

FACTS AND PROCEDURAL BACKGROUND

In 2011, Rendon signed Frazer's partnership agreement (the relevant clauses will be covered later in this opinion). Frazer is an accounting firm headquartered in Anaheim, California. Frazer provides accounting services to clients located in California, as well as other states and countries.

In 2019, the Frazer partnership terminated Rendon's partnership status following an internal investigation.

---

[1] Further undesignated statutory references are to the Business and Professions Code.

*Court Proceedings*

Frazer later filed a complaint against Rendon for breach of contract and related causes of action. Frazer claimed Rendon: A) breached its noncompete clause by doing accounting services for former Frazer clients (seeking about $2.6 million in damages); and B) breached its nonsolicitation clause by hiring a Frazer employee (seeking about $60,000 in damages).

Rendon filed a cross-complaint against Frazer for breach of contract and declaratory relief. Rendon alleged Frazer wrongfully denied him pay and benefits (seeking about $1.4 million in damages).

Frazer and Rendon filed motions for summary adjudication. The trial court denied Frazer's motion and granted Rendon's motion. In a written ruling, the court stated its reasoning as follows:

"The broadly worded noncompete clause prevents Rendon for a period of five years after leaving the partnership from soliciting or performing work for anyone who has been a Frazer client within the prior five years, unless Rendon pays Frazer 'an amount of 150% of whatever the . . . client was billed by Frazer' in the year before the partner left. The noncompetition provision does not contain a territorial limitation as required by section 16602. [¶] The broadly worded nonsolicitation clause prevents Rendon for a period of five years after leaving the partnership from soliciting or hiring any Frazer employee, unless Rendon 'pay[s] a toll equal to 30% of the annualize salary' of the employee for the one year before the employee leaves Frazer. [¶] The noncompetition and nonsolicitation provisions exceed the allowable scope of sections 16600 and 16602. The provisions are unenforceable."

Frazer filed a timely appeal from the trial court's granting of Rendon's motion for summary adjudication (the parties settled the remaining causes of action and filed a stipulated entry of judgment to facilitate appellate review).

3

II

DISCUSSION

"A party may move for summary adjudication as to one or more causes of action . . . if the party contends that the cause of action has no merit . . . ." (Code Civ. Proc., § 437c, subd. (f)(1).) "Summary adjudication works the same way as summary judgment, 'except it acts on specific causes of action . . . , rather than on the entire complaint.'" (*Oroville Hospital v. Superior Court* (2022) 74 Cal.App.5th 382, 398.)

"A trial court properly grants summary judgment where no triable issue of material fact exists and the moving party is entitled to judgment as a matter of law." (*Merrill v. Navegar, Inc*. (2001) 26 Cal.4th 465, 476.) On appeal, we review the record de novo, considering the evidence set forth in the moving papers. (*Artiglio v. Corning Inc.* (1998) 18 Cal.4th 604, 612.)

In this opinion, we affirm the trial court's ruling regarding: A) the client noncompete clause, and B) the employee nonsolicitation clause.

### A. The Client Noncompete Clause

Frazer claims the trial court improperly found the client noncompete clause is not enforceable and the court should have rewritten (blue penciled) its noncompete clause to include the required geographic limitation. We disagree.

In this part of the discussion, we will: 1) review relevant principles of law; 2) quote Frazer's client noncompete clause; and 3) analyze the facts as applied to the law.

#### 1. Relevant Principles of Law

Generally, noncompete agreements are void under section 16600. (*Advanced Bionics Corp. v. Medtronic, Inc.* (2002) 29 Cal.4th 697, 706 ["California has a strong interest in protecting its employees from noncompetition agreements"].) "Except as provided in this chapter, every contract by which anyone is restrained from engaging

in a lawful profession, trade, or business of any kind is to that extent void." (§ 16600.)

A statutory exception (for partnership agreements) provides in full as follows: "Any partner may, upon or in anticipation of any of the circumstances described in subdivision (b), agree that he or she will not carry on a similar business *within a specified geographic area* where the partnership business has been transacted, so long as any other member of the partnership, or any person deriving title to the business or its goodwill from any such other member of the partnership, carries on a like business therein." (§ 16602, subd. (a), italics added.) "Subdivision (a) applies to either of the following circumstances: [¶] (1) A dissolution of the partnership. [¶] (2) Dissociation of the partner from the partnership." (§ 16602, subd. (b).)

Ordinarily, "ambiguities in written agreements are to be construed against their drafters." (*Sandquist v. Lebo Auto., Inc.* (2016) 1 Cal.5th 233, 247.) In order to enforce a partnership noncompete agreement under section 16602, the agreement itself "must clearly establish that it falls within this limited exception." (*Hill Medical Corp. v. Wycoff* (2001) 86 Cal.App.4th 895, 903 (*Wycoff*).) A noncompete clause in a partnership agreement will be enforced only "to the extent that it is reasonable and necessary in terms of time, activity *and territory*." (See *Monogram Industries, Inc. v. Sar Industries, Inc.* (1976) 64 Cal.App.3d 692, 698, italics added.)

### 2. *Frazer's Client Noncompete Clause*

Frazer's client noncompete clause provides, in relevant part: "As a material part of the compensation arrangement . . . each Partner upon the cessation of the Partner status of such Partner ('Former Partner'), *will not . . . solicit or otherwise perform accounting services for any Person who was a client of the Partnership* within a five (5)-year period ending on the date the Partner became a Former Partner ('Partnership Client'), during the Restricted Period [five years].

"Notwithstanding the preceding provisions . . . the Former Partner will be

relieved from such restriction with respect to a Partnership Client if, at the beginning of the Former Partner's . . . subsequent engagement with such Partnership Client, the Former Partner pays to the Partnership an amount ('Restricted Buyout Amount') equal to [150 percent] of the Partnership Client billings . . . for the one (1)-year period ending on the date the Partner became a Former Partner ("Restriction Buyout Percentage")."

### 3. Analysis and Application

Noncompete agreements are presumptively void under California law. However, there is a limited exception allowing a partner to "agree that he or she will not carry on a similar business *within a specified geographic area* where the partnership business has been transacted." (§ 16602, subd. (a), italics added.)

Frazer's noncompete clause does not specify a geographic area within which Rendon was prohibited from carrying on an accounting business. Indeed, Frazer's broad noncompetition clause essentially prohibited Rendon from soliciting or performing accounting services for former Frazer clients literally anywhere. In short, we find the Frazer client noncompete clause to be facially invalid under the plain terms of section 16602. (See *Wycoff*, *supra*, 86 Cal.App.4th at p. 903 [in order to uphold a noncompete agreement, the terms of the contract "must clearly establish that it falls within this limited exception"].) Thus, we affirm the trial court's ruling granting Rendon's motion for summary adjudication regarding the noncompete clause.

Frazer primarily relies on *Swenson v. File* (1970) 3 Cal.3d 389 (*Swenson*), to support its notion that its noncompete clause is enforceable even though it does not contain a territorial limitation. But *Swenson* is distinguishable because the California Supreme Court was interpreting and applying an earlier version of section 16602, which is markedly different from section 16602 as it exists today.

In *Swenson*, a retired partner from a Los Angeles County accounting firm opened up his own accounting practice in a different part of the county. (*Swenson*, *supra*,

6

3 Cal.3d at p. 391.)  The plaintiff (partnership) sued the defendant (retired partner) for breaching a covenant not to compete.  The covenant at issue provided:  "'The retired partner will not render service to a client which is or has been a client of the partnership within the last three years prior to the retirement of the retiring partner.'"  (*Ibid*.)  Another covenant (not at issue) provided:  "'The retired partner will not render service to a client which has its principal office within a radius of twenty miles from any partnership office which existed on the date of his retirement . . . .'"  (*Id.* at p. 392.)  When the partnership agreement was executed, section 16602 provided:  "'Partners may, upon or in anticipation of a dissolution of the partnership, agree that none of them will carry on a similar business *within the same city or town* or a specified part thereof, where the partnership business has been transacted.'"  (*Id*. at p. 392, italics added.)

As to the disputed covenant, the *Swenson* opinion held:  "On its face . . . the covenant would be invalid in its entirety, since it forbids defendant from serving former partnership clients without regard to territorial limits."  (*Swenson*, *supra*, 3 Cal.3d at p. 395.)  "However, section 16602 does not invalidate that covenant in its entirety, for under section 16600 a contract in restraint of trade is only 'to that extent void.'  Thus, the rule of severability *may be* invoked to uphold defendant's covenant to the extent that it falls *within the limits permitted* by section 16602."  (*Ibid*., italics added.)  The Court concluded the covenant "*may be* upheld to the extent that serving such clients would also constitute, under former section 16602, 'carrying on' an accounting business within the Cities of Pasadena or Azusa, where the partnership offices are located."  (*Ibid*., italics added.)  The Court ultimately found the defendant had not breached the covenant because he did not do business with former clients in Pasadena or Azusa.  (*Id*. at p. 397.)

Here, just as in *Swenson*, the client noncompete clause is facially invalid because it forbids Rendon from soliciting or performing accounting services for "former partnership clients without regard to territorial limits."  (*Swenson*, *supra*, 3 Cal.3d at p. 395.)  However, unlike *Swenson*, a trial court cannot invoke the doctrine of severability

to uphold the Frazer noncompete clause "to the extent that it falls within the limits permitted by section 16602." (*Ibid*.) This is because section 16602 no longer includes territorial limits that may be judicially imposed (i.e., "the same city or town or a specified part thereof"). (*Swenson*, at p. 392.) Section 16602 now requires *the parties to specify* the territorial limits within the terms of their agreement: "Any partner may . . . agree that he or she will not carry on a similar business within *a specified geographic area* where the partnership business has been transacted . . . ." (§ 16602, subd. (a).)[2]

Frazer really does not dispute that its noncompete clause does not specify a geographic area as required by the statute. (See § 16602, subd. (a).) Rather, Frazer argues the trial court was required to have rewritten (blue penciled) the noncompete clause "'to include reasonable limitations.'" We disagree.

"In the construction of a statute or instrument, the office of the Judge is simply to ascertain and declare what is in terms or in substance contained therein, *not to insert what has been omitted*, or to omit what has been inserted . . . ." (Code Civ. Proc., § 1858, italics added.) "Where a contract has several distinct objects, of which one at least is lawful, and one at least is unlawful, in whole or in part, the contract is void as to the latter and valid as to the rest." (Civ. Code, § 1599.)

The doctrine of severability "'preserves and enforces any lawful portion of the parties' contract that *feasibly may be* severed.'" (*Baeza v. Superior Court* (2011) 201 Cal.App.4th 1214, 1230, italics added.) The severability "doctrine is equitable and fact specific, and its application is appropriately directed to the sound discretion of the . . . trial courts in the first instance." (*Marathon Entertainment, Inc. v. Blasi* (2008) 42

---

[2] Given the realities of modern business communications (pdf documents, Internet access, e-mail, etc.), it is possible that the statutory requirement for "a specified geographic area" may be somewhat antiquated. (See § 16602, subd. (a).) But it is not the job of the judicial branch to update and amend statutes. (See *Burden v. Snowden* (1992) 2 Cal.4th 556, 562 ["Where the words of the statute are clear, we may not add to or alter them to accomplish a purpose that does not appear on the face of the statute"].)

Cal.4th 974, 998.) Generally, a court only abuses its discretion when its decision is arbitrary and/or capricious. (*People v. Carmony* (2004) 33 Cal.4th 367, 378.)

In this case, the trial court analyzed *Swenson*, *supra*, 3 Cal.3d 389, and declined to rewrite (blue pencil) Frazer's noncompete clause:

"The agreement in *Swenson*, restricted a departing partner from providing services (i) to any partnership client and (ii) to a non-partnership client which had its principal office within a 20-mlle radius of any partnership office. The *Swenson* court noted the blanket prohibition on servicing the firm's clients was facially invalid due to the lack of any geographic restriction, but upheld both restrictions 'to the extent that servicing such clients would also constitute, under former section 16602, "carrying on" an accounting business with the Cities of Pasadena or Azusa, where the partnership offices are located.' [Citation.] Unlike in . . . *Swenson*, the agreement here does not contain a geographic limitation of any kind. The court is skeptical [it] may, 'under the guise of the rule of reasonableness' or otherwise, include a geographic limitation in a partnership covenant not to compete when the parties did not include one."

We share the skepticism of the trial court. Frazer did not include any kind of geographic limitation in its noncompete clause, and section 16602 itself no longer includes any geographic limitations; therefore, the trial court in this case had no statutory language to logically refer to (as in *Swenson*) in order save the presumptively void noncompete agreement. As far as the trial court imposing its own "reasonable" geographic limitations, Frazer suggests in its briefing that the noncompete clause should "be enforced as to customers in Los Angeles and Orange Counties." But we are left to wonder why Frazer did not simply specify that geographic limitation within its own partnership agreement, which Frazer had presumably drafted. (See Code Civ. Proc., § 1858 [it is not the role of courts to insert contract terms that have been omitted by the parties]; see also *Sandquist v. Lebo Auto., Inc*., *supra*, 1 Cal.5th at p. 247 ["ambiguities in written agreements are to be construed against their drafters"].)

9

Moreover, in a declaration signed by Frazer's managing partner, he averred: "Frazer provides professional services to clients located in California, states throughout the country, and in some instance[s] internationally." The managing partner also stated: "In California, Frazer provides services to clients located throughout the state, including, *but not limited to*, clients located in Orange County, Los Angeles County, San Diego County, San Bernardino County, Riverside County, and Santa Clara County. For other states, Frazer provides professional services to clients located in, but not limited to, Florida, Nevada, Colorado, and Texas." (Italics added.)

Given Frazer's failure to specify a geographic limitation, and the relatively large area in which Frazer provides accounting services to its clients, we find the trial court did not abuse its discretion when it declined to rewrite Frazer's client noncompete clause (i.e., the trial court was neither arbitrary nor capricious). To reiterate, we affirm the court's ruling granting Rendon's motion for summary adjudication on the basis that Frazer's noncompete clause is void as a matter of law.

## B. *The Employee Nonsolicitation Clause*

Frazer also claims the trial court erred when it found its employee nonsolicitation clause to be void under section 16600. We disagree.

"Except as provided in this chapter, every contract by which anyone is restrained from engaging in a lawful profession, trade, or business of any kind is to that extent void." (§ 16600.) "At common law, and in many states, restraints on the practice of a profession, trade, or business were valid, if reasonable. [Citation.] In contrast, however, California has settled public policy in favor of open competition." (*Wycoff*, *supra*, 86 Cal.App.4th at pp. 900–901.)

"In the years since its original enactment . . . our courts have consistently affirmed that section 16600 evinces a settled legislative policy in favor of open

10

competition and employee mobility." (*Edwards*, *supra*, 44 Cal.4th at pp. 945–946, 949–950 [the rule against a restraint of trade is not subject to "a narrow-restraint exception"].)

Generally, employee nonsolicitation agreements are presumptively void. (*Diodes, Inc. v. Franzen* (1968) 260 Cal.App.2d 244, 255.) "The interests of the employee in his own mobility and betterment are deemed paramount to the competitive business interests of the employers, where neither the employee nor his new employer has committed any illegal act accompanying the employment change." (*Ibid*.)

"California courts have consistently declared [section 16600] an expression of public policy to ensure that every citizen shall retain the right to pursue any lawful employment and enterprise of their choice. Section 16600 has specifically been held to invalidate employment contracts which prohibit an employee from working for a competitor when the employment has terminated, unless necessary to protect the employer's trade secrets." (*Metro Traffic Control, Inc. v. Shadow Traffic Network* (1994) 22 Cal.App.4th 853, 859, 861 ["'Any attempt to restrict competition by the former employee by contract appears likely to be doomed'"]; *Pacific Wharf & Storage Co. v. Standard American Dredging Co.* (1920) 184 Cal. 21, 24–25 (*Pacific*) ["The rule making void contracts in restraint of trade is not based upon any consideration for the party against whom the relief is sought, but upon considerations of sound public policy"].)

Frazer's employee nonsolicitation clause provides: "Each Partner acknowledges that the Partnership's [employees] are valuable assets in the operation of the Partnership's business. Each Partner agrees that, during the period that such Person is a Partner . . . and for five (5) years following such Person ceasing to be a Partner, *such Person shall not, in any time or in any manner, directly or indirectly, solicit, hire, recruit or encourage any other* [*employee*] *to the Partnership to leave the Partnership or work for any other Person*. If a Partner breaches the provisions of this Section . . . , such Partner immediately shall pay to the Partnership an amount equal to thirty percent (30%) of the annualized salary of the applicable [employee] for the one (1)-year period

11

immediately preceding the date the employment of such [employee] is terminated with the Partnership." (Italics added.)

Here, Frazer's broad nonsolicitation clause not only purports to prevent Rendon from *soliciting* Frazer's employees to work for him *or any other person*, but it also purports to prevent Rendon from *hiring* Frazer's employees. This plainly violates California's long established public policy of open competition and mobility under section 16600 because the nonsolicitation clause seeks to restrain Frazer employees from being able to freely "leave the Partnership or *work for any other Person*." (Italics added.) (See § 16600 ["every contract by which anyone is restrained from engaging in a lawful profession, trade, or business of any kind is to that extent void"]; see also *Pacific*, *supra*, 184 Cal. at pp. 24–25 ["The rule making void contracts in restraint of trade is not based upon any consideration for the party against whom the relief is sought, but upon considerations of sound public policy"].)

Thus, we find the trial court properly granted Rendon's motion for summary adjudication on the basis the nonsolicitation clause is void under section 16600.

Frazer primarily relies on *Loral Corp. v. Moyes* (1985) 174 Cal.App.3d 268 (*Loral*), in support of its argument that its employee nonsolicitation clause is enforceable; however, *Loral* is readily distinguishable. In *Loral*, a company sued its former employee for breaching a nonsolicitation agreement. (*Id.* at pp. 273–274.) Under that agreement, the former employee had agreed "not to disrupt, damage, impair or interfere with his former employer by 'raiding' its work-staff." (*Id.* at p. 275.) The Court of Appeal found the nonsolicitation agreement did not create an unreasonable restraint on trade because the "restriction only slightly affects [the company's] employees." (*Id.* at p. 279.) The company's employees were still free to seek employment with competitors (including the defendant); that is, the company's employees only lost the option of being first contacted by the defendant. (*Id.* at pp. 279–280.) As such, the Court of Appeal held that the employee nonsolicitation agreement was not void. (*Id.* at p. 280.)

12

Unlike the agreement in *Loral*, *supra*, 174 Cal.App.3d 268, the Frazer nonsolicitation clause creates a restraint of trade in violation of section 16600 because it interferes with a Frazer employee's mobility, or freedom to leave employment at Frazer, and then to work for Rendon or "any other Person." Thus, *Loral* does not alter our analysis that the Frazer nonsolicitation agreement is void under section 16600.[3]

Frazer also argues: "Soliciting or hiring former partnership employees to work at a competing business is fairly construed to be part of carrying on a similar business within the meaning of section 16602 such that non-solicitation clauses are governed by section 16602." However, Frazer cites no legal authority supporting the proposition that a nonsolicitation agreement can be construed under section 16602. In any event, even if we were to analyze the employee nonsolicitation clause under section 16602, we would find it unenforceable because it also does not include a geographic limitation as required under that statute. (See *infra*, pt.II.A.)

Finally, Frazer argues "the trial court provided no justification why it found the worker non-solicitation clause to be unenforceable." We disagree. But we need not address this argument because it is of no consequence. (See *Meda v. Autozone, Inc.* (2022) 81 Cal.App.5th 366, 374 ["'we review the ruling of the trial court, not its rationale'"].)

---

[3] Because we find *Loral*, *supra*, 174 Cal.App.3d 268, to be distinguishable, we need not address Rendon's colorable argument that *Loral* is no longer "good law." (See *AMN Healthcare, Inc. v. Aya Healthcare Services, Inc*. (2018) 28 Cal.App.5th 923, 937–939 [the holding in *Loral*, *supra*, 174 Cal.App.3d 268, has been called into doubt]; see also *Edwards*, *supra*, 44 Cal.4th at pp. 949–950 [the section 16600 rule prohibiting a restraint of trade is not subject to "a narrow-restraint exception"].)

III

DISPOSITION

The judgment is affirmed.  The costs on appeal are awarded to Rendon.


MOORE, ACTING P. J.

WE CONCUR:


GOETHALS, J.


MOTOIKE, J.