**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 10-2114**

DAVID SCHWARTZ, d/b/a Rent A Wreck; RENT A WRECK
INCORPORATED, d/b/a Bundy Auto Sales,

Plaintiffs - Appellees,

v.

RENT A WRECK OF AMERICA INCORPORATED; BUNDY AMERICAN LLC,

Defendants – Appellants,

and

J.J.F. MANAGEMENT SERVICES INCORPORATED,

Defendant.

**No. 10-2260**

DAVID SCHWARTZ, d/b/a Rent A Wreck; RENT A WRECK
INCORPORATED, d/b/a Bundy Auto Sales,

Plaintiffs - Appellants,

v.

RENT A WRECK OF AMERICA INCORPORATED; BUNDY AMERICAN LLC,

Defendants – Appellees,

and

J.J.F. MANAGEMENT SERVICES INCORPORATED,

Defendant.

DAVID SCHWARTZ, d/b/a Rent A Wreck; RENT A WRECK INCORPORATED, d/b/a Bundy Auto Sales,

Plaintiffs - Appellees,

v.

RENT A WRECK OF AMERICA INCORPORATED; BUNDY AMERICAN LLC,

Defendants – Appellants,

and

J.J.F. MANAGEMENT SERVICES INCORPORATED,

Defendant.

Appeals from the United States District Court for the District of Maryland, at Baltimore. Peter J. Messitte, Senior District Judge. (1:07-cv-01679-PJM)

Argued: January 26, 2012               Decided: March 9, 2012

Before KING and DUNCAN, Circuit Judges, and J. Michelle CHILDS, United States District Judge for the District of South Carolina, sitting by designation.

Affirmed in part, vacated in part, reversed in part, and remanded by unpublished opinion. Judge Duncan wrote the opinion, in which Judge King and Judge Childs joined.

**ARGUED:** Daniel Janssen, QUARLES & BRADY, Milwaukee, Wisconsin, for Rent A Wreck of America Incorporated and Bundy American LLC. Jacob Ira Weddle, GORDON & SIMMONS, LLC, Frederick, Maryland, for David Schwartz and Rent A Wreck Incorporated. **ON BRIEF:** Leah J. Stoecker, QUARLES & BRADY, Milwaukee, Wisconsin, for

Rent A Wreck of America Incorporated and Bundy American LLC. Roger C. Simmons, GORDON & SIMMONS, LLC, Frederick, Maryland, for David Schwartz and Rent A Wreck Incorporated.

————————

Unpublished opinions are not binding precedent in this circuit.

DUNCAN, Circuit Judge:

These consolidated appeals arise out of a jury verdict that a contract arose based upon a course of dealing between appellants/cross-appellees Rent-A-Wreck of America, Inc. ("RAWA") and Bundy American, LLC ("Bundy") on the one hand, and appellees/cross-appellants David Schwartz and Rent-A-Wreck, Inc. ("RAWI"), on the other, with respect to RAWI's and Schwartz's operation of a used car rental business in West Los Angeles, California. Both sets of parties moved to set aside certain portions of the jury verdict under Rule 50(b). The district court granted in part and denied in part these motions. The district court then entered a partial judgment in favor of RAWI and Schwartz, from which both sets of parties appeal. Subsequently, upon motion by RAWI and Schwartz, the district court ordered RAWA and Bundy to comply with certain directives. RAWA and Bundy appealed from that order.[1] For the reasons that follow, we affirm in part, vacate in part, reverse in part, and remand for further proceedings.

---

[1] The appeal from the district court's first order, dated September 23, 2010, was docketed as No. 10-2114. The appeal from the district court's second order, dated May 11, 2011, was docketed as No. 11-1561. By order of this court, the two appeals were consolidated.

I.

A.

We begin by setting forth the facts relevant to this appeal. In 1962, Schwartz began operating a used car lot under the name of Bundy Auto Sales. In 1973, Schwartz began using the name Rent-A-Wreck. Schwartz painted a sign with the name "Bundy Rent-A-Wreck" and placed it outside his business. Two years later, in 1975, Schwartz incorporated under the name Rent-A-Wreck, Inc. On May 13, 1977, Schwartz formed another new company with an investor named Geoffrey Nathanson. The name of the new company, owned equally between Schwartz and Nathanson, was Bundy American Corporation ("Bundy"). Bundy was formed for the purpose of offering Rent-A-Wreck brand auto rental franchises.

In March and April of 1977, shortly before Schwartz and Nathanson formed Bundy, they had entered into an agreement that provided that all of Schwartz's and RAWI's interests in the Rent-A-Wreck name and marks would be assigned to Bundy; that Schwartz would assign to Bundy his and RAWI's rights to the Rent-A-Wreck name; that the territory of Los Angeles County was excepted from this assignment; and that the agreement would be binding upon both parties and their respective heirs, executors, administrators, and permitted assigns (the "1977 Agreement").

On May 13, 1977, Schwartz, for himself and RAWI, executed a written assignment of the Rent-A-Wreck service mark to Bundy (the "1977 Assignment").

In 1985, Schwartz and Nathanson, with the agreement of Bundy's franchisees, decided to take Bundy public under the name Rent-A-Wreck of America, Inc. For this purpose, they entered into an agreement (the "1985 Agreement"). Pursuant to the 1985 Agreement, Schwartz agreed that "I shall not engage in any activities that compete with the business of [RAWA], except activities in the protected territory described below, including the running of my Bundy Rent-A-Wreck operation in West Los Angeles." J.A. 2939 (¶ 3). The 1985 Agreement further identified a defined territory--located within Los Angeles-- within which Schwartz could continue operating a single car rental location (called Bundy Rent-A-Wreck). RAWA agreed that it would grant no franchises, nor open any RAWA-owned or affiliated operations in Schwartz's protected territory. The 1985 Agreement further provided that it would terminate on June 30, 1985, except that the exclusivity provision would continue in full force and effect after that date.

On August 12, 1985, RAWA's offering prospectus was issued (the "Prospectus"). It stated, in relevant part, that "[i]n connection with the formation of Bundy, Schwartz assigned all of his right, title and interest in and to the trade name and

6

trademark 'Rent-A-Wreck' to Bundy, retaining the right to the concurrent use of the trade name and trademark at the original Rent-A-Wreck facility owned by him in West Los Angeles." J.A. 2883 ("Background"). It further stated, in relevant part, that Schwartz was "the originator of the Rent-A-Wreck concept and has operated Bundy Rent-A-Wreck, his West Los Angeles based Rent-A-Wreck facility, the nation's first, since 1973. Bundy Rent-A-Wreck operates independently of, and not under a license agreement from [RAWA]." J.A. 2889. The Prospectus further noted the existence and terms of the 1985 Agreement.

On August 11, 1987, the RAWA board unanimously approved a proposal that RAWA would lease and operate Schwartz's business and territory in West Los Angeles beginning for an initial term of one year, with the option for four additional one year lease terms. In an agreement executed on September 1, 1987, RAWA agreed to lease and operate Schwartz's car rental business (the "1987 Lease Agreement"). During the lease period, RAWA replaced Schwartz's original Bundy Rent-A-Wreck sign with a stylized Rent-A-Wreck sign and logo identical to the ones used by RAWA franchisees. On May 20, 1988, RAWI assigned the Rent-A-Wreck mark in the State of California to Bundy (the "1988 Assignment"). Schwartz signed the 1988 Assignment, in his capacity as the President of RAWI. In 1990, Schwartz sold his controlling interest in RAWA.

7

In September 1990, RAWA terminated the lease on Schwartz's car rental location, and Schwartz resumed operating an independent rental car business at the same location. Schwartz continued using the signage and business forms that RAWA had left behind at the end of the lease term. RAWA tolerated Schwartz's use of its marks for the next sixteen years.[2] Over time, new employees of RAWA even began including his location on Uniform Franchise Offering Circulars ("UFOC")[3] and, when RAWA established an internet page, it included reference to his location. The 2001 and 2002 UFOCs state that Schwartz "has operated a vehicle rental business under the Rent-A-Wreck name since 1973. This business is located in Los Angeles, California and operates under a royalty-free agreement." J.A. 1544 (Information for Prospective Franchisees, July 1, 2001); J.A. 1744 (Information for Prospective Franchisees, July 1, 2002). Each UFOC attached as an exhibit a "List of Current Franchisees," which included Schwartz. J.A. 1676-77; J.A. 1823-24. Nonetheless, there has never been a formal franchise agreement executed between RAWA and Schwartz. The relationship

---

[2] In 1993, RAWA relocated its headquarters from California to Maryland.

[3] A UFOC is a document that contains information franchisors must provide to franchisees by law. The Federal Trade Commission regulates the contents of a UFOC.

8

between the two is therefore somewhat unorthodox. RAWA imposes certain requirements upon its franchisees, including ongoing training; compliance with standards and policies; restrictions on products and services offered; warrant and customer service requirements; sales quotas; maintenance, appearing, and remodeling requirements; insurance; and advertising. Schwartz's rental location does not abide by such requirements.

In 2001, Bundy, now operating as a wholly owned subsidiary of RAWA, began to operate auto rental businesses within the Los Angeles area under the name "Priceless." There are currently Priceless brand franchises operating in Los Angeles and West Hollywood.

In 2005, RAWA entered into negotiations with J.J.F. Management Services, Inc. ("JJFM") to sell itself. That sale was completed in 2006. While the sale was pending, Schwartz filed two lawsuits against RAWA, challenging the sale. On October 28, 2006, RAWA wrote to him, asking that he either provide evidence of any agreement to use the Rent-A-Wreck name, or to stop holding himself out to the public as a RAWA franchisee (the "October 2006 letter"). In June 2007, RAWA removed Schwartz from its website.

On June 25, 2007, Schwartz and RAWI filed an action against RAWA, Bundy, and JJFM[4] in the United States District Court for the District of Maryland.[5]  RAWI and Schwartz[6] sought a declaratory judgment in their favor pursuant to the terms of the 1985 Agreement, which they alleged gave them a royalty-free franchise; specific performance of the 1985 Agreement; and breach of an implied-in-fact contract, which appellees alleged arose from the parties' course of dealings between 1977 and 2007.  RAWA and Bundy[7] filed an answer and counterclaims.  As relevant here, appellants' counterclaims included a request for a declaration that the exclusive franchise sought by appellees

---

[4] JJFM was dismissed from the action on March 25, 2009, and is not a party to this appeal.

[5] On September 7, 2007, RAWI and Schwartz filed a First Amended Complaint, alleging, inter alia, violations of the Lanham Act and seeking cancellation of RAWA's marks.  The district court dismissed both of those claims.  The operative complaint in this action is the Second Amended Complaint, filed on October 9, 2008.

[6] As already noted, RAWI and Schwartz are appellees in both appeals before us, but they are also cross-appellees in the first appeal.  For ease of readability, we will refer to them as "appellees" throughout our opinion, unless specifically noted otherwise.

[7] As already noted, RAWA and Bundy are appellants in both appeals before us, but they are also cross-appellants in the first appeal.  For ease of readability, we will refer to them, unless otherwise specifically noted, as "appellants" throughout our opinion.

was unenforceable as an unlawful restraint on trade. They further sought a declaration that the 1985 Agreement could be terminated by appellants, or in the alternative, that appellants had already terminated all of appellees' rights in the October 2006 letter.

The parties' claims were tried to a jury from April 1, 2010 through April 13, 2010. At the close of evidence, the district court instructed the jury regarding applicable legal principles, including breach of contract and duration of contracts. Appellants requested that the district court instruct the jury with respect to the law of assignment. Appellants' proposed instruction stated that an assignor may not maintain an action upon a claim after making an absolute assignment of the claim to another, and that if the jury found that appellees assigned to appellants the right to use the Rent-A-Wreck name or associated marks in 1988, it should reject appellees' claim that the 1985 Agreement grants them the right to use the Rent-A-Wreck name and also reject appellees' claim that an implied contract grants them that right. Appellants further requested an instruction regarding the law of warranties of assignment. Finally, appellants requested an instruction regarding the law of contract termination, which would have required the jury, in the event it found that a contract existed, to examine whether the contract had an express, or implied, term of duration. If the

jury were to find that no term was agreed upon, appellants' proposed instruction was that the term of such a contract is a reasonable time given the circumstances and purpose under which the contract arose. The district court declined to give appellants' proposed instructions.

After the jury was unable to reach a unanimous verdict, the parties agreed to accept a majority verdict. The jury's verdict was in the form of answers to questions on a verdict form. In relevant part, the jury responded to those questions as follows:

[Question No. 1]: Do you find that [appellees], based on a course of dealing, have an express or implied contract, written or oral, with [appellants], with respect to [appellees'] operation of a used car rental business in West Los Angeles

[Answer to Question No. 1]: Yes

[Question No. 3]: If your answer to Question 1 is 'yes,' check which, if any, of the following are features of such contract:

[First subpart of Question No. 3]: RAWA Franchise in favor of [appellees]

[Answer to first subpart of Question No. 3]: Yes

[Second subpart of Question No. 3]: Exclusive RAWA franchise in favor of [appellees] in West Los Angeles as delineated in or after 1985.

[Answer to second subpart of Question No. 3]: Yes

[Third subpart of Question No. 3]: Whether or not as a franchisee, the right of [appellees] to use trade name and trademark Rent-A-Wreck, and receive same benefits as franchisees without the obligations

[Answer to third subpart of Question No. 3]: No

12

[Fourth subpart of Question No. 3]:  Rights of [appellees] to any of the foregoing without paying fees or royalty to RAWA

[Answer to fourth subpart of Question No. 3]:  No

[Fifth subpart of Question No. 3]:  Existence of any of the foregoing rights in favor of [appellees] in perpetuity

[Answer to fifth subpart of Question No. 3]:  No


[Question No. 4]:  If these rights were not in perpetuity, what would be a reasonable time for the rights to last? (indicate duration)

[Answer to Question No. 4]:  Rest of his life

J.A. 3108a-b.

The remaining questions on the verdict form concerned the appellants' counterclaims:

[Question No. 5]:  Did [appellants] or their predecesors in interest ever expressly authorize [appellees] to use the Rent-A-Wreck trade name and trademark?

[Answer to Question No. 5]:  Yes

[Question No. 6]:  With reference to the foregoing question, did the [appellants] or their predecessors in interest ever implicitly authorize [appellees] to use the Rent-A-Wreck trade name and trademark?

[Answer to Question No. 6]:  Yes

[Question No. 7]:  If you find that [appellants] or their predecessors in interest either expressly or implicitly authorized [appellees] to use the Rent-A-Wreck trade name and trademarks, did [appellants] expressly or implicitly reserve the right to terminate that use by [appellees]?

13

[Answer to Question No. 7]:  No

[Question No. 10]:  Do you find that the [appellees] and [appellants], or [appellants'] predecessors in interest, entered into a written contract or contracts in 1977 and 1988, which [appellees] have breached?

[Answer to Question No. 10]:  No

J.A. 3108b-c.

Following the verdict, appellees filed a Rule 50(b) motion. Specifically, appellees requested that a judgment notwithstanding the verdict be entered as follows: (1) appellees were entitled to the same benefits as other RAWA franchisees, but were not required to fulfill the franchise obligations of other RAWA franchisees; (2) appellees had no obligation to pay royalties or fees to RAWA; and (3) appellees had perpetual rights under the contract.  Appellants also filed a Rule 50(b) motion.  Appellants requested that a judgment notwithstanding the verdict be entered rejecting all of appellees' claims.  They further requested a judgment notwithstanding the verdict on their counterclaims.

On September 23, 2010, the district court granted a partial judgment notwithstanding the verdict under Rule 50(b) in favor of appellees and denied appellants' Rule 50(b) motion.  In making its ruling on the parties' motions, the district court first noted that "[o]ne prominent issue in this case has been whether the jury's responses to the Special Interrogatories

14

submitted at the close of trial are binding upon the Court or merely advisory." J.A. 3247. The district court then attempted to dispose of this issue as follows: "First, insofar as the [jury's] findings are merely advisory, the Court reaches contrary conclusions based on its own consideration of the evidence. Alternatively, insofar as those jury[] findings are binding, the Court grants Plaintiff's Renewed Motion for Judgment and their Motion for Judgment Notwithstanding the Verdict as to those particular findings." J.A. 3249.

The district court went on to hold that appellees were entitled to a royalty-free franchise with an exclusive territory in West Los Angeles, California, for the duration of Schwartz's life. The district court further held that appellees were not subject to any of the same franchise obligations as other franchisees operating in the RAWA network of franchises were. Appellants filed a notice of appeal on September 29, 2010. Appellees filed a notice of cross-appeal on October 23, 2010.

On November 30, 2010, the district court clarified that appellees' territory was exclusive not only as to other Rent-A-Wreck franchises, but also franchises operating under the Priceless name and marks, for which, as discussed above, Bundy, a wholly owned subsidiary of RAWA, is franchisor.

While the cross-appeals were pending before us, appellees moved, in relevant part, to enforce the district court's final

15

order of declaratory judgment. Specifically, they sought certain directives from the court regarding the presentation of appellees on appellants' website. The district court treated the motion as one for clarification of the district court's final order of declaratory judgment. On May 11, 2011, the district court issued a memorandum opinion, ordering appellants to make certain alterations to their website pursuant to the district court's September 23, 2010 order. RAWA and Bundy filed an additional notice of appeal, including their objections to this order, on May 25, 2011.

## II.

On appeal, the parties raise a plethora of arguments. At the outset, appellants contend that we must vacate and remand because the district court treated the jury's verdict as advisory and was required to make specific findings under Rule 52(a), which it failed to do.

As an alternative to their Rule 52 argument, appellants argue that the district court erred in denying their Rule 50(b) motion pertaining to the jury's finding of the existence of a contract, as well as its specific features. Specifically, appellants contend that the district court should have set aside the jury's verdict that appellees have a contract based on a course of dealing with appellants, that appellants had not

16

reserved the right to terminate their relationship with appellees, and that appellees had an exclusive territory. As to the exclusivity provision, appellants contend that it is void ab initio under California law. Appellants further contend that the district court erred in setting aside the jury's verdict that appellees' contract entitled them neither to receive the same benefits as franchisees without the obligations of franchisees, nor to receive such benefits without paying fees or royalties to appellants. On cross-appeal, appellees contend that the district court should have granted their Rule 50(b) motion to set aside the jury's verdict that appellees' rights under the contract exist for the duration of Schwartz's life, and that the court should instead have ruled that those rights are perpetual.

Turning to the remaining issues on appeal, appellants make three additional arguments. They contend that the district court improperly held that the implied contract found by the jury gave appellees the right to operate exclusively within West Los Angeles, not only of other Rent-A-Wreck franchises, but also of auto rental franchises operated by appellants under a different trade name, including the Priceless franchises that have coexisted with Schwartz's rental location for over a decade. They further challenge certain jury instructions given

17

by the district court.[8]  Also, on cross-appeal, appellees assert that the district court erred in denying their request for attorneys' fees.  We address each issue in turn.

A.

We first address appellants' challenge under Federal Rule of Civil Procedure 52.  Appellants argue that the district court treated the jury's findings as advisory, and was therefore required to "find the facts specially and state its conclusions of law separately."  Fed. R. Civ. P. 52(a)(1).  They further contend that the district court failed to do so here.

In relevant part, Rule 52(a) provides that:

> In an action tried on the facts without a jury or with an advisory jury, the court must find the facts specially and state its conclusions of law separately. The findings and conclusions may be stated on the record after the close of the evidence or may appear in an opinion or a memorandum of decision filed by the court.

It is well established that "[t]he Federal Rule 52(a) requirement that the trial court find the facts specially and state separately its conclusions of law is mandatory and must be fairly observed by district judges."  9 C. Wright & A. Miller,

---

[8] Finally, appellants challenge the district court's May 11, 2011 order directing them to modify their website.  We vacate the May 11, 2011 order in light of our ruling on the appeal from the September 23, 2010 order.  We remand to the district court for reexamination of the May 11, 2011 order in light of this decision.

Federal Practice and Procedure § 2574 (3d ed. 2008). By contrast, Rule 50(b) does not require the district court to make specific findings of fact or law. If a district court tries an action with an advisory jury, and the parties nonetheless file motions under Rule 50(b), the proper course of action for the district court is to decline to adjudicate the Rule 50(b) motions, and instead consider the arguments in the context of the court's determination of whether to adopt the advisory jury's findings. As an example, in Wooten v. Lightburn, 579 F. Supp. 2d 769 (W.D. Va. 2008), although the defendant had filed a Rule 50(b) motion, the court declined to rule on that motion because the case was tried before an advisory jury, with the ultimate decision left to the district court. Id. at 772. Instead, the Wooten court considered the parties' arguments under Rule 52(a). Id.

Here, in contrast, the district court did not determine that the action was tried with an advisory jury, and did not make the specific findings of fact or law required by Rule 52. Instead, the district court adjudicated the parties' Rule 50(b) motions. To the extent it denied the parties' Rule 50(b) motions, it held that there was a legally sufficient evidentiary basis for the jury's verdict. To the extent it granted the parties' Rule 50(b) motions, it held that there was not a legally sufficient evidentiary basis for the jury's verdict. In

19

either event, the district court was treating the jury's findings as binding. Therefore, we reject appellants' argument, and proceed to address the remaining issues on appeal.

B.

Both parties challenge the district court's denial of their Rule 50(b) motions. We review the denial of a Rule 50(b) motion de novo. First Union Commercial Corp. v. GATX Capital Corp., 411 F.3d 551, 556 (4th Cir. 2005). We affirm, "[i]f, viewing the facts in the light most favorable to the non-moving party, there is sufficient evidence for a reasonable jury to have found in the [non-moving party's] favor." Id. (alteration in original) (citation omitted). We address the district court's Rule 50(b) rulings in the following order: (1) the sufficiency of the jury finding of an implied contract between the parties; (2) the sufficiency of the jury finding that appellants did not reserve their right to terminate; (3) whether the exclusivity provision is void ab initio under California law; (4) the sufficiency of the jury finding with respect to franchise obligations; and (5) the sufficiency of the jury finding with respect to royalties and fees.

1.

Appellants argue that as a matter of law, there is no contract, express or implied, between the parties. Schwartz could not possibly have been a party to an exclusive franchise

20

agreement with RAWA, they contend, because he had signed away any and all of his interest in the Rent-A-Wreck name by virtue of the 1977 Assignment and the 1988 Assignment.

Under California law,[9] the interpretation of a contract presents an issue of law when the language of the contract is unambiguous, i.e., "clear and explicit." F.B.T. Prods., LLC v. Aftermath Records, 621 F.3d 958, 963-64 (9th Cir. 2010); accord Porkert v. Chevron Corp., No. 10-1384, 2012 WL 90142, at *4 (4th Cir. Jan. 12, 2012) ("Under California law, the interpretation of a contract presents an issue of law when the language of a contract is unambiguous."). Parol evidence is properly admitted to construe a contract only when its language is ambiguous. F.B.T. Prods., 621 F.3d at 963. "When the contract is unambiguous, '[n]o obligation can be implied, which would result

---

[9] We are a federal court sitting in diversity, and must apply the substantive law of the state in which the district court sits, which in this case is Maryland. "Under Maryland choice-of-law rules, a contractual claim (including a claim for an implied contract) is governed by the law of the place where the contract is made, which is the place where the last act required to make a contract binding occurs." Harte-Hanks Direct Mktg./Baltimore, Inc. v. Varilease Techn. Fin. Gr., Inc., 299 F. Supp. 2d 505, 518 n.13 (D. Md. 2004). As we discuss herein, the jury found a contract based on a course of dealing between the parties that began no later than 1985. Neither party has pointed to any conduct post-dating 1993 (the year in which RAWA relocated its corporate headquarters to Maryland) that was required to make the contract binding. In view of these facts, we hold that the last act required to make the contract, based on the course of dealing, binding occurred prior to 1993. As such, California law governs the contract.

21

in the obliteration of a right expressly given under a written contract.' " Thrifty Payless, Inc. v. Mariners Mile Gateway, LLC, 111 Cal. Rptr. 3d 173, 182 (Cal. Ct. App. 2010) (quoting Gerlund v. Elec. Dispensers Int'l, 235 Cal. Rptr. 279, 286 (Cal. Ct. App. 1987)).

In addition to express contracts, California law also recognizes implied contracts. Retired Emps. Ass'n of Orange Cnty., Inc. v. County of Orange, No. S184059, 2011 WL 5829598, at *2 (Cal. Nov. 21, 2011).

> The terms of an express contract are stated in words. The existence and terms of an implied contract are manifested by conduct. The distinction reflects no difference in legal effect but merely in the mode of manifesting assent. Accordingly, a contract implied in fact consists of obligations from a mutual agreement and intent to promise where the agreement and promise have not been expressed in words.
>
> Even when a written contract exists, evidence derived from experience and practice can now trigger the incorporation of additional, implied terms. Implied contractual terms ordinarily stand on equal footing with express terms provided that, as a general matter, implied terms should never be read to vary express terms.

Id. (citations and quotation marks omitted). "Whether the parties' conduct creates such implied agreements is generally a question of fact." Scott v. Pac. Gas & Elec. Co., 904 P.2d 834, 839 (Cal. 1995) (quotation marks omitted). However, "the law does not recognize implied contract terms that are at variance with the terms of the contract as expressly agreed or as

22

prescribed by statute." County of Orange, 2011 WL 5829598, at *4 (quotation marks omitted).

Turning to the facts before us, we must first determine whether a reasonable jury could have found that an implied contract existed based on a course of dealing between appellants and appellees. If we answer that question in the affirmative, we must proceed to analyze whether the terms of the implied contract found by the jury are at variance with the terms of any preexisting contract between the parties.

First, viewing the facts in the light most favorable to appellees, we conclude that there was sufficient evidence for a reasonable jury to have found in appellees' favor as to the existence of an implied contract. Notably, the record is replete with evidence that appellants treated appellee Schwartz as a de facto franchisee between 1990 (when RAWA terminated its lease of Schwartz's rental location) and 2005 (when Schwartz began acting in an adverse manner toward RAWA). As already noted, appellants stated in official company documents that Schwartz was operating under the Rent-A-Wreck name pursuant to a royalty-free agreement and listed Schwartz as one of their current franchisees. Under our deferential standard of review, this evidence creates sufficient factual basis for the jury's finding of an implied contract.

23

Second, we hold that the terms of the implied contract found by the jury are not at variance with the terms of any preexisting contract between the parties. Notably, the jury did not make any specific finding regarding whether the implied contract constituted additional terms in a preexisting express contract between the parties, or whether it was an independent implied contract. Under either construction, however, we believe the jury's verdict passes muster. Appellants point to the 1977 Assignment and 1988 Assignment as extinguishing all of appellees' rights to use the Rent-A-Wreck mark. However, neither of those agreements contains any language regarding whether appellees could continue to use the trade name and trademark at the original Rent-A-Wreck facility. The 1985 Agreement, on the other hand, postdates the 1977 Assignment, and specifically provides that Schwartz retains, for an indefinite period, the right to the concurrent use of the trade name and trademark at the original Rent-A-Wreck facility owned by him in West Los Angeles. Thus, nothing in either the 1977 Assignment or 1988 Assignment specifically precludes Schwartz from continuing to use the Rent-A-Wreck mark at his West Los Angeles location, and the 1985 Agreement gives him precisely that right for an indefinite period.

In sum, we hold that a reasonable jury could have concluded that appellees had an implied contract with appellants with

24

respect to appellees' operation of a used car rental business in West Los Angeles.

2.

Appellants contend that, as a matter of law, any franchise agreement between the parties ended in 2006 and could not have continued to exist thereafter. California courts engage in a three-stage inquiry to determine the duration of a contract. McCaskey v. California State Auto. Ass'n., 118 Cal. Rptr. 3d 34 (Cal. Ct. App. 2010), provides that:

> [T]he court first consults the terms of the contract; then the circumstances and other indicia of intent; and only when those steps fail to establish a durational term does the court impose a judicially determined "reasonable time" limitation on the duty at issue. This last step is a manifestation of the broader principle that when any essential term has been omitted from the contract, and the parties' intent concerning that term cannot otherwise be ascertained, the law will supply a reasonable term.

Id. at 49-50 (emphasis omitted). Here, the first step is not applicable because the jury found an implied contract. The second step seeks to ascertain the parties' intent from circumstantial evidence. Here, the jury did just that, and determined that the duration of the contract is the remainder of Schwartz's life. As already noted, the jury had a great deal of evidence to rely upon in determining the terms of the implied contract, including its duration. Notably, the 1985 Agreement contains a provision permitting Schwartz to continue to operate

25

his car rental business at the West Los Angeles location. It was not unreasonable for the jury to have concluded that the parties' conduct subsequent to the 1985 Agreement was consistent with this provision, and that the parties' intent was to preserve Schwartz's right to use the Rent-A-Wreck name for the duration of his life.[10]

Appellants' argument that the duration shall be a "reasonable time" fails. Because the first two steps have prescribed a durational term under California law, there is no need to impose a judicially determined "reasonable time" limitation on the parties' rights under the contract.

3.

Appellants next contend that, as a matter of law, any implied provision giving Schwartz and RAWI the right to operate exclusively within the territory delineated in the 1985 Agreement is void ab initio under California Business and Professions Code § 16600.

Section 16600 prescribes that "[e]xcept as provided in this chapter, every contract by which anyone is restrained from

---

[10] It therefore follows that the district court did not err in denying appellees' Rule 50(b) motion in this regard. There was sufficient evidence for the jury to conclude that the course of the dealings between the parties created an implied contract that gave Schwartz rights for the duration of his lifetime, rather than an indefinite duration.

engaging in a lawful profession, trade or business of any kind is to that extent void." This is a codification of the "general rule in California [that] covenants not to compete are void." Hill Med. Corp. v. Wycoff, 103 Cal. Rptr. 2d 779, 784 (Cal. Ct. App. 2001).[11] The California Supreme Court has held that "[s]ection 16600 is unambiguous, and if the Legislature intended the statute to apply only to restraints that were unreasonable or overbroad, it would have included language to that effect." Edwards v. Arthur Andersen LLP, 189 P.3d 285, 293 (Cal. 2008). At the same time, as the Ninth Circuit recently noted, California courts construing § 16600 have differentiated between "post-contract" covenants and "in-term" covenants. See Comedy Club, Inc. v. Improv West Assocs., 553 F.3d 1277, 1291 (9th Cir. 2009) (discussing California case law). In Dayton Time Lock Serv., Inc. v. Silent Watchman Corp., 124 Cal. Rptr. 678 (Cal. Ct. App. 1975), for example, a California appellate court addressed an in-term "exclusive dealing clause" in a franchise

---

[11] There are two statutory exceptions to § 16600. Sections 16601 and 16602 permit broad covenants not to compete in two situations: where a person sells the goodwill of a business and where a partner agrees not to compete in anticipation of dissolution of a partnership. Appellees argue that § 16601 is applicable here because the 1985 Agreement "was by definition a sale"--a contention in support of which they offer no supporting authority. Appellees' Br. 53. We note that the jury found an implied franchise agreement, which would not constitute a sale under any definition. We therefore conclude that neither of the statutory exceptions is applicable here.

agreement, and held that "[e]xclusive dealing contracts are not necessarily invalid," but "[t]hey are proscribed when it is probable that performance of the contract will foreclose competition in a substantial share of the affected line of commerce. A determination of illegality requires knowledge and analysis of the line of commerce, the market area, and the affected share of the market." Id. at 682 (emphasis added) (citation omitted). Under California law, this is a question of fact. See Fisherman's Wharf Bay Cruise Corp. v. Superior Court, 7 Cal. Rptr. 3d 628, 649-52 (Cal. Ct. App. 2003) (reversing grant of summary judgment because a triable issue of fact existed as to whether exclusive dealing foreclosed competition in a substantial share of the affected market). A California appellate court recently noted that Dayton's conclusion that exclusive dealing contracts were sometimes permissible in the context of a franchise relationship was based on the franchisor's need to "maintain some control over the franchisee." Kelton v. Stravinski, 41 Cal. Rptr. 3d 877, 882 (Cal. Ct. App. 2006). The Ninth Circuit has construed Dayton and Kelton as follows:

> Dayton Time Lock and Kelton make evident that under []
> § 16600 an in-term covenant not to compete in a
> franchise-like agreement will be void if it
> "foreclose[s] competition in a substantial share" of a
> business, trade, or market. Also, California courts
> are less willing to approve in-term covenants not to
> compete outside a franchise context because there is

28

not a need to protect and maintain [the franchisor's] trademark, trade name and goodwill.

Comedy Club, Inc., 553 F.3d at 1292 (alteration in original) (emphasis added) (citations and quotations omitted).

Interpreting § 16600 in light of the case law yields the conclusion that an in-term exclusive dealing agreement in the context of a franchising agreement does not run afoul of § 16600, provided that it does not foreclose competition in a substantial share of the market. In applying Dayton[12] and Kelton to this case, we conclude that appellees are entitled to the exclusive territory provision if two circumstances can be met: (1) the implied contract found by the jury is a franchising agreement, whereby RAWA can maintain some control as is necessary to protect its trademark, trade name, and goodwill; and (2) the exclusivity arrangement does not foreclose

---

[12] Appellants urge us to read Arthur Andersen as overruling Dayton, arguing that Arthur Andersen's reasoning precludes the creation or application of judicially created exceptions to § 16600. Although that argument is not without merit, Arthur Andersen did not specifically overrule Dayton or Kelton, nor has it been so construed by any California court. Additionally, the Ninth Circuit's decision in Comedy Club postdates Arthur Andersen. In sum, we do not believe that the Ninth Circuit "disregarded clear signals emanating" from the California Supreme Court "pointing to a different rule," and therefore defer to its interpretation of California law. Mellon Bank, N.A. v. Ternisky, 999 F.2d 791, 796 (4th Cir. 1993) (quoting Factors Etc., Inc. v. Pro Arts, Inc., 652 F.3d 278, 283 (2d Cir. 1981)); see id. (deferring to Third Circuit's interpretation of Pennsylvania law).

competition in a substantial share of the affected line of commerce.

Appellants contend that the first requirement is not met here to the extent the district court ruled that appellees do not have to comply with any franchisee obligations. We agree. However, because, as discussed below, we reverse the district court's grant of appellees' Rule 50(b) motion with regard to that issue, we proceed to the second requirement.

Following Fisherman's Wharf, we conclude that the question of whether the exclusive territory at issue would foreclose competition in a substantial share of the market for rental cars is a question of fact for the jury. This issue was not presented to the jury. Accordingly, we vacate the district court's denial of appellants' Rule 50(b) motion in this regard, and instruct the district court to submit to a jury the question of whether the exclusive territory provision forecloses competition in a substantial share of the market for rental cars.[13]

---

[13] Appellees argue that even if they are not entitled to the exclusivity provision under California law, they have an implied-in-fact contract under Maryland law. Because RAWA relocated its headquarters to Maryland in 1993, they contend, any course of dealing between the parties thereafter giving rise to a contract implied in fact occurred in Maryland. We are not persuaded by this argument. As already noted, we believe California law applies to the implied contract found by the jury. It bears further note that the exclusivity provision is
(Continued)

30

4.

We next turn to the district court's grant of appellees' Rule 50(b) motion requesting a judgment that although they are entitled to the benefits afforded to other RAWA franchisees, they do not have the obligations of other RAWA franchisees. On appeal, we must determine whether, viewing the facts in the light most favorable to appellants, there was sufficient evidence for the jury to conclude that appellees were required to fulfill the same obligations as other RAWA franchisees. We conclude that there was such a basis for the jury's finding because appellants listed Schwartz as a current franchisee on the UFOCs. It was reasonable for the jury to conclude that the implied agreement was a franchise agreement, with the attendant benefits and obligations, whether or not appellees were actually in compliance with their franchisee obligations. The jury was also free to draw a contrary inference, of course; however, we do not believe the district court was correct to hold that this was only permissible inference.[14]

derived from the 1985 Agreement, which was made in California. We therefore reject appellees' argument in this regard.

[14] It bears note that if we were to uphold the district court's judgment that appellees were not required to fulfill the same obligations as other RAWA franchisees, the grant of an exclusive territory to appellees would be void ab initio under § 16600. As already discussed, appellees are entitled to the
(Continued)

31

5.

We now turn to appellants' final Rule 50(b) challenge: that the district court erred in setting aside the jury's verdict that the contract between the parties did not provide a royalty-free franchise. On appeal, we must determine whether, viewing the facts in the light most favorable to the nonmoving party, there was sufficient evidence for the jury to conclude that appellees were required to pay royalties pursuant to the implied contract. We conclude that there was no such basis for the jury's finding because appellants specifically stated in their UFOCs that Schwartz was operating under a royalty-free agreement. Notably, appellants point to no evidence in the record that could support a reasonable inference that appellants ever asked appellees for any fees or royalties. Absent such evidence, we conclude that a reasonable jury could not have interpreted the course of dealing between the parties to require

---

exclusive territory provision under California law only if the implied contract found by the jury is a franchising agreement, whereby appellants can maintain some control as is necessary to protect their trademark, trade name, and goodwill. Under the district court's order, appellants have no control over appellees' use of their trademark, trade name, or goodwill, and appellees would therefore not be entitled to the exclusive territory provision.

32

payment of fees or royalties.  Therefore, we affirm the district court's grant of appellees' Rule 50(b) motion on this ground.

C.

Having resolved the parties' respective challenges to the district court's Rule 50(b) rulings, we turn to the remaining issues on appeal, beginning with appellants' contention that the district court erred in precluding Priceless--a subsidiary of RAWA that operates its own locations within Schwartz's exclusive territory--from operating within Schwartz's territory. Specifically, they argue that (1) there was no evidence presented at trial to justify this outcome, and (2) that Priceless and its franchisee were necessary and indispensable parties under Rule 19.  Because we are persuaded that the contract implied by the jury could not have contained any terms relating to Priceless or other auto rental businesses operating under anything other than the Rent-A-Wreck name and marks, we vacate the district court's judgment in this regard, and order the district court to enter a judgment that excludes Priceless.

As already discussed, the jury found a contract based on the course of dealings between the parties with respect to appellees' operation of a used car rental business in West Los Angeles.  The jury further found an exclusive RAWA franchise in favor of appellees in West Los Angeles as delineated in or after 1985.  The jury did not find, nor was it asked to, whether the

33

contract between the parties precluded RAWA from opening any RAWA-owned or affiliated operations in West Los Angeles that were not operating under the "Rent-A-Wreck" name. Therefore, any finding by the district court that RAWA or its affiliates are bound by the specific provisions of the 1985 Agreement in that regard cannot be supported by the jury verdict.

Moreover, the jury's verdict was based on the course of dealings between the parties. It is undisputed that this course of dealing included the coexistence in West Los Angeles--for over a decade--of both Schwartz's business and the Priceless franchises. As such, even if this question were before the jury, it could not have concluded that the exclusivity provision of the implied contract foreclosed the continued operation of the Priceless franchises.

### D.

We next address appellants' contention that the district court erred in failing to give certain jury instructions proffered by them. Specifically, appellants contend that the district court should have given its proffered instructions regarding the law of assignment, the law of warranties of assignment, and the law of termination of contracts of indefinite duration. We review jury instructions under an abuse of discretion standard, which we have explained as follows:

> We review jury instructions holistically and through the prism of the abuse of discretion standard. . . . [A] single instruction to a jury may not be judged in artificial isolation, but must be viewed in the context of the overall charge. . . . Accordingly, we simply determine whether the instructions construed as a whole, and in light of the whole record, adequately informed the jury of the controlling legal principles without misleading or confusing the jury to the prejudice of the objecting party.
>
> The party challenging the jury instructions faces a heavy burden, for we accord the district court much discretion to fashion the charge. . . A district court will be reversed for declining to give an instruction proposed by a party only when the requested instruction (1) <u>was correct</u>; (2) <u>was not substantially covered by the court's charge to the jury</u>; <u>and</u> (3) <u>dealt with some point in the trial so important, that failure to give the requested instruction seriously impaired that party's ability to make its case.</u>

<u>Noel v. Artson</u>, 641 F.3d 580, 587 (4th Cir. 2011) (emphasis added).

With respect to their proposed instruction on the law of assignment, appellants argue that without instructing the jury on the legal ramifications of the 1977 Assignment and the 1988 Assignment, the jury could not properly consider RAWA's defense--that any contract, including the purported 1985 Agreement, could not create a franchise relationship. We reject this argument for two reasons. First, the district court instructed the jury regarding appellants' breach of contract claim, and also permitted appellants to argue that the 1988 Assignment was dispositive of Schwartz's claims as a matter of law. More significantly, however, the proposed instruction is incorrect:

35

as already discussed, the jury could have found an implied franchise agreement notwithstanding the assignments. Accordingly, the district court did not err in failing to give the appellants' proposed assignment instruction.

Appellants have also failed to demonstrate that their proposed instruction with respect to the law of warranties of assignment--based on the Restatement (Second) of Contracts § 333(1)--dealt with some point in the trial so important that failure to give the requested instruction seriously impaired their ability to make their case.[15] Appellants sought that instruction to advance their allegation that Schwartz, in spite of the assignments, repeatedly averred that RAWA did not own the Rent-A—Wreck marks, and that these actions caused it to incur attorneys' fees that were properly an element of damages that could have resulted from a breach of warranties. However, as appellees point out, the Restatement (Second) of Contracts § 333 (1981), provides that "when a warranty of an assignor is broken, the assignee is entitled to the usual remedies for breach of a contract." Id., cmt. d. Notably, California subscribes to the American Rule, under which parties cannot generally recover

---

[15] It is also doubtful whether the instruction is legally correct. Appellants argue that it was legally correct because it was based on the Restatement (Second) of Contracts § 333(1), but they acknowledge that California has not yet accepted that section of the Restatement.

attorneys' fees.  See Kim v. Euromotors West/The Auto Gallery, 56 Cal. Rptr. 3d 780, 785 (Cal. Ct. App. 2007).  Thus, even if the district court had provided the jury with appellants' proposed instruction, it would not have aided appellants' cause.

Finally, as to their proposed instruction on the law of contract termination, appellants contend that the district court's actions meant that the jury could not have properly considered RAWA's affirmative defense--that any franchise agreement between RAWA and Schwartz was terminable on reasonable notice.  Here, too, appellants' argument fails.  As already discussed, the duration of an implied agreement is a question of fact under California law, to be determined by a jury.  The district court properly instructed the jury, in relevant part, that "[i]f you happen to find that there was an understanding, but there was no understanding as to the duration, then you would have to indicate what an appropriate duration was."  J.A. 1274.  This instruction differed from appellants' proposed instruction only in that it did not use the "reasonable time" language.  Functionally, however, there is scant difference between "appropriate duration" and "reasonable time."  Thus, the appellant's proposed instruction was substantially covered by the district court's charge to the jury.

In sum, the district court did not abuse its discretion in refusing to provide any of the three instructions advanced by appellants.

E.

Finally, we address appellees' challenge to the district court's order denying their motion for attorneys' fees under section 35(a) of the Lanham Act. They argue that in so doing, the district court incorrectly applied a bad faith standard. Appellees further contend that the district court's factual findings were clearly erroneous because they were "spitefully held hostage" by appellants' trademark infringement counterclaim. Appellees' Br. 68. Appellants contend that the district court applied the correct standard, and in the alternative, that any error was harmless because appellees have failed to meet the applicable standard.

"[I]n exceptional cases," the Lanham Act permits the award of "reasonable attorney fees to the prevailing party." 15 U.S.C. § 1117(a). The statute does not define what qualifies as an "exceptional case." "We have defined the 'exceptional case' as one in which 'the defendant's conduct was malicious, fraudulent, willful or deliberate in nature." Retail Servs., Inc. v. Freebies Publ'g, 364 F.3d 535, 550 (4th Cir. 2004) (quoting People for the Ethical Treatment of Animals v. Doughney, 263 F.3d 359, 370 (4th Cir. 2001)). In this circuit, we employ a

> dual standard of proof upon prevailing plaintiffs and defendants. A prevailing plaintiff seeking attorney fees must demonstrate that the defendant acted in bad faith. However, when an alleged infringer is the prevailing party, he can qualify for an award of attorney fees upon a showing of something less than bad faith by the plaintiff.

Id. (citations and quotation marks omitted). "Some pertinent considerations for judging a plaintiff's (or counterclaim plaintiff's) conduct when the defendant prevails include economic coercion, groundless arguments, and failure to cite controlling law. Thus, the focus tends to be on the plaintiff's litigation conduct or pre-litigation assertion of rights." Id. at 550-51. "The question, however, is not whether snippets of the record or isolated arguments clearly lack merit. We must determine, in light of the entire case, whether defendants' claims and assertions were so lacking in merit that the action as a whole was 'exceptional.' " Id. at 551.

Here, the district court stated, in relevant part: "I'm not sure how I conclude that [appellants] acted in bad faith in any way or otherwise . . . put forward a totally groundless claim." Supp. J.A. 59. It further stated that appellants were "entitled to test the legitimacy of the [trademark infringement] claim," that appellants played "hard ball" with Schwartz, and that "they're entitled to do that. That's what happens in the commercial world." Supp. J.A. 67-68.

39

We conclude that although the district court did not specifically address the "something less than bad faith" standard, its conclusions that appellants did not put forward a totally groundless claim and that their actions were not beyond the norm of commercial dealing satisfy the applicable legal standard. Moreover, even under the lesser standard, we do not believe that appellees have demonstrated clear error. Notably, they have merely cited snippets of conversation in support of their argument, see Appellees' Br. 69 (describing a conversation between Schwartz and the holder of a controlling interest in RAWA), which we have specifically held insufficient under the "something less" standard.

## III.

For the foregoing reasons, we affirm the district court's judgment in part, vacate it in part, reverse it in part, and remand for further proceedings. To summarize, we reject the appellants' Rule 52 challenge. With respect to the Rule 50(b) challenges, we affirm the district court's judgment that there existed an implied contract based on a course of dealing between the parties with respect to Schwartz and RAWI's operation of a used car rental business in West Los Angeles; that Schwartz and RAWI are not required to pay royalties or fees to RAWA or Bundy; and that the parties' rights under the contract shall last for

the duration of Schwartz's life. We vacate the district court's denial of RAWA and Bundy's Rule 50(b) motion seeking judgment as a matter of law that the grant of an exclusive franchise within Los Angeles to Schwartz and RAWI is void ab initio under California law. We hold that the question of whether an exclusive territorial provision forecloses competition in a substantial share of the market of the affected line of commerce--which, if answered in the affirmative, would void the exclusivity provision under California law--is a factual question; therefore, remand is required to permit a factfinder to make that factual finding. In the event that the exclusive territory provision is valid, we nonetheless reverse the district court's judgment that the provision operates to prohibit the Priceless entities from operating within Schwartz's and RAWI's territory. We further reverse the district court's judgment that RAWI and Schwartz are entitled to the benefits of other RAWA franchisees but do not have the same obligations as those franchisees. Instead, we reinstate the jury's verdict that Schwartz and RAWI cannot obtain such benefits unless they agree to fulfill the same obligations as other RAWA franchisees. With regard to the remaining issues on appeal, we reverse the district court's judgment that the implied contract found by the jury requires the Priceless entities to cease operations within appellees' exclusive territory. We affirm the district court's

41

decision not to give appellant's proposed jury instructions. We also affirm the district court's denial of appellees' motion for attorneys' fees. Finally, we vacate the district court's May 11, 2011 order in light of our decision today.

AFFIRMED IN PART,
VACATED IN PART,
REVERSED IN PART,
AND REMANDED
