[No. B029036. Second Dist., Div. Three. Aug. 1, 1988.]

CROCKFORD'S CLUB LIMITED, Plaintiff and Respondent, v. SMAIL SI-AHMED et al., Defendants and Appellants.

**[Opinion certified for partial publication.\*]**

---

*\* Pursuant to California Rules of Court, rule 976.1, this opinion is certified for publication with the exception of parts 1 and 2 of the Discussion.

**COUNSEL**

Ervin, Cohen & Jessup, Dean B. Herman, Calvin E. Davis and Elsa Banuelos for Defendants and Appellants.

Kelley, Drye & Warren, Howard M. Loeb, Douglas G. Tennant and Dana A. Suntag for Plaintiff and Respondent.

**OPINION**

KLEIN, P. J.—Defendants and appellants Smail Si-Ahmed, an individual (Si-Ahmed), Costa Overseas, Inc., a Panamanian corporation (Costa), and Inter-Consulter, Inc., a California corporation (Inter-Consulter), appeal an order denying their motion to set aside entry of a default judgment obtained by Crockford's Club Limited, an English corporation (Crockford's).

For the reasons discussed below, the order is affirmed.

## FACTUAL AND PROCEDURAL BACKGROUND

In July 1980, Si-Ahmed passed eight bad checks to Crockford's, an English gambling casino, in the total amount of £400,000. In late 1982, Si-Ahmed made a partial payment of £20,000.

In January 1984, Crockford's obtained a £380,157 default judgment in England against Si-Ahmed. Crockford's hired an investigator to locate Si-Ahmed and secure payment. In 1986, Crockford's traced Si-Ahmed to his new residence and office at 804 North Rodeo Drive in Beverly Hills.

On January 30, 1987, Crockford's filed in the superior court a verified complaint for enforcement of the English judgment, and an ex parte application for a temporary restraining order to enjoin Si-Ahmed, Costa and Inter-Consulter from dissipating, secreting or removing their assets from California. Crockford's alleged, inter alia: Costa is a Panamanian corporation which is neither licensed to do business nor doing business in California, and which holds title to the Rodeo Drive residence; Inter-Consulter's "putative place of business" is located at Si-Ahmed's home; the corporations were mere shells created by Si-Ahmed "for avoiding just debts and other ultra vires purposes, to the extent that no separateness or individuality of said entities exists."

The trial court granted the temporary restraining order.

Repeated unsuccessful attempts were made to personally serve the defendants at the Rodeo Drive address.

On the evening of February 13, 1987, Acosta, a process server, rang the doorbell. Maria, the maid, answered the door. Acosta advised Maria he was there to serve Si-Ahmed. Maria responded she was not authorized to accept service and directed Acosta to Mrs. Abadou, a neighbor who lived across the street. About one half hour later, Acosta returned to Si-Ahmed's home and again rang the bell. Maria answered over the intercom and refused to come down and open the door. Acosta informed her she was being served and left the papers at the door.

A few minutes later, Green, another process server, approached the residence. Si-Ahmed's teen-age sons answered the door. Green asked to speak to Maria. The older boy said Maria had accepted papers recently for his father in another matter, and his father had told her if she ever did so again, she would be fired. After further discussion during which Green told them the necessity of serving the papers on their father, the boys referred Green to Mrs. Abadou. They advised Green she was "handling their father's

affairs. They said that she was the only one who could help [Green] and that she was waiting for [Green] to contact her." The following day, copies of the complaint and summons were delivered to Abadou in Si-Ahmed's driveway while the process server's car blocked her exit.

On March 10, 1987, the trial court granted a preliminary injunction in favor of Crockford's, prohibiting the defendants from disposing of or secreting their assets.

On March 30 and April 3, 1987, Crockford's mailed defendants copies of a request to enter default.

Default was entered on April 1 and 3, and judgment was entered on April 8, 1987, in the amount of $720,820, including interest and costs.

On April 16, 1987, the trial court granted Crockford's ex parte application for an order directing the levying officer to seize a 1984 Mercedes and 1985 Rolls Royce registered to Inter-Consulter, which vehicles were stored in the garage of Si-Ahmed's home. On April 17, 1987, the trial court issued a writ of execution.

On May 4, 1987, Crockford's filed an ex parte application for an order to show cause why an order of sale of a dwelling should not issue.

On June 3, 1987, appellants moved to set aside the judgment under Code of Civil Procedure section 473.[1] The motion was based on the grounds the failure to respond to the complaint within the time allowed was due to improper service, and that the complaint sought recovery on an unenforceable debt.

The trial court denied the section 473 motion and ordered the sale of the residence. This appeal followed.

## CONTENTIONS

Si-Ahmed contends: (1) the summons and complaint were not properly served; and (2) even assuming service was proper, gambling debts are unenforceable as against public policy.

---

[1] All statutory references are to Code of Civil Procedure, unless otherwise indicated.

## DISCUSSION

1, 2*

.   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .

3. *Public policy favors enforcement of the judgment.*

■   Si-Ahmed's contention the gambling debt is unenforceable as against public policy is unpersuasive.

Preliminarily, the obligation arises from Si-Ahmed's passing bad checks at Crockford's check-cashing facility. In exchange for the checks, Si-Ahmed received gambling tokens which he lost in games of chance. It is therefore arguable Crockford's is not pursuing a gambling debt but rather, is seeking to be made whole for checks which were dishonored.

■   More importantly, Si-Ahmed's argument overlooks the fact that these events took place in England, a jurisdiction which permits casino gambling. In *Aspinall's Club Ltd.* v. *Aryeh* (1982) 86 App.Div.2d 428 [450 N.Y.S.2d 199], an English gambling club brought an action against a New York resident to enforce a default judgment obtained in England. The New York court held gambling "in legalized and appropriately supervised forms" was not against that state's public policy. (*Id.,* at p. 203.)

In view of the expanded acceptance of gambling in this state as manifested by the introduction of the California lottery and other innovations (see *Advanced Delivery Service, Inc.* v. *Gates* (1986) 183 Cal.App.3d 967, 975 [228 Cal.Rptr. 557]), it cannot seriously be maintained that enforcement of said judgment "is so antagonistic to California public policy interests as to preclude the extension of comity in the present case." (*Wong* v. *Tenneco, Inc.* (1985) 39 Cal.3d 126, 136 [216 Cal.Rptr. 412, 702 P.2d 570].)

Contrary to Si-Ahmed's position, enforcing this judgment promotes rather than violates California public policy. As our Supreme Court held in *Wong,* "[p]rotection of persons, . . . , who wrongfully seek to circumvent the substantive laws of one jurisdiction by enlisting the aid of the courts in another violates and offends the public policy of both jurisdictions. [Fn. omitted.]" (39 Cal.3d at p. 137.)

---

*See footnote, *ante,* page 1402.

## DISPOSITION

The order is affirmed. Crockford's to recover costs on appeal.

Arabian, J., and Luros, J.,* concurred.

---

* Assigned by the Chairperson of the Judicial Council.