*1291 Opinion
EPSTEIN, P. J.
In this case, we hold that an action lies to recover funds advanced by one party to another, to enable the latter to engage in legal gambling where the agreement reserves the right of the party advancing the money to terminate the relationship and recover money not expended. The trial court ruled otherwise in sustaining a demurrer to the complaint without leave to amend.
According to the charging pleadings, Xavier Kyablue entered into an oral agreement with defendant Abraham Watkins by which he transferred two sets of funds to Watkins, one to play poker according to Kyablue’s specific instructions where it was legal to do so, and the other as a loan for living expenses to Watkins. The trial court sustained Watkins’s demurrer on public policy grounds because the contract involved a gambling consideration. Kyablue contends the general rule against enforcement of gambling-related contracts does not apply to his complaint as pleaded, and argues the pleaded facts together with appropriate public policy considerations provide a viable cause of action on the contract. In the alternative, he contends that if the provision of the agreement involving gambling is found unenforceable, the court should sever it and allow him to seek enforcement of the provisions involving a personal loan from him to Watkins. We conclude that Kyablue’s amended complaint stated a viable cause of action. We reverse the judgment (order of dismissal) and remand with directions.
FACTUAL AND PROCEDURAL SUMMARY
The following factual summary is taken from the charging pleading. Kyablue is a professional poker player and his friend, defendant Watkins, wanted to play professionally as well. In October 2008, the two entered into an oral agreement. As described more fully below, this contract provided that Kyablue would provide necessary financial backing for Watkins to play poker under specified conditions at locations where doing so was legal. The agreement also provided for Kyablue to loan money to Watkins for certain personal expenses and to “maintain his lifestyle.” Even after money was transferred, it could not be spent without the express authorization of Kyablue. All winnings from gambling with the funds were to be split between the two men and all losses were to be borne solely by Kyablue. The agreement provided that Kyablue could terminate the arrangement at any time, in which event Watkins was to repay all loans and all other money not authorized to be used for gambling upon Kyablue’s demand.
In November 2009, Kyablue terminated the relationship and asked for repayment pursuant to the terms of the agreement. By then, Watkins had *1292 received loans of $11,435 for personal expenses and $26,619 for potential, but not yet authorized, gambling purposes. These funds were never put into use for gambling purposes. Watkins refused to return the money and Kyablue alleges that he has converted it for his own use.
The charging pleading alleged causes of action for breach of oral contract, breach of a contract implied in fact, quasi-contract, money had and received, and conversion. The trial court sustained Watkins’s demurrer without leave to amend on the ground that California public policy forbids enforcement of gambling-related contracts. This appeal followed.
DISCUSSION
In reviewing an order sustaining a demurrer, we assume well-pleaded factual allegations to be true and examine the complaint de novo to determine whether it alleges facts sufficient to state a cause of action on any legal theory. (Committee for Green Foothills v. Santa Clara County Bd. of Supervisors (2010) 48 Cal.4th 32, 42 [105 Cal.Rptr.3d 181, 224 P.3d 920].)
California law requires that consideration for a contract be lawful. (Civ. Code, § 1607.)[1] Section 1667 provides that consideration is unlawful if it is contrary to an express provision of law or to the policy of an express law even if not expressly prohibited, or if it is “[otherwise contrary to good morals.” Courts have held it is “this section which establishes the law that a contract founded upon a gambling consideration is unenforceable.” (Lavick v. Nitzberg (1948) 83 Cal.App.2d 381, 382 [188 P.2d 758].) In sustaining Watkins’s demurrer, the trial court stated: “The overarching gravamen of this complaint has to do with the gambling contract, a gambling-related transaction. And it is a matter guided by the public policy of the State of California.”
However, courts have recognized exceptions to the general rule against enforcing contracts founded on illegal consideration. (Tri-Q, Inc. v. Sta-Hi Corp. (1965) 63 Cal.2d 199, 218-219 [45 Cal.Rptr. 878, 404 P.2d 486] (Tri-Q, Inc.); Kelton v. Stravinski (2006) 138 Cal.App.4th 941, 949 [41 Cal.Rptr.3d 877].) The rule is “intended to prevent the guilty party from reaping the benefit of his wrongful conduct, or to protect the public from the future consequences of an illegal contract.” (Tri-Q, Inc., at p. 218.) To serve these objectives courts recognize varying forms and degrees of illegality, and that the particular facts of the case must be considered before remedy is refused. (Ibid.; Homestead Supplies, Inc. v. Executive Life Ins. Co. (1978) 81 Cal.App.3d 978, 990-991 [147 Cal.Rptr. 22].) The rule is not intended to be inflexibly “applied in its fullest rigor under any and all circumstances,” but *1293 involves weighing the relative moral fault of the plaintiff and the defendant, whether refusing a remedy can protect the public, the degree of moral turpitude involved, and whether application of the rule will result in the unjust enrichment of the defendant at the expense of the plaintiff. (Southfield v. Barrett (1970) 13 Cal.App.3d 290, 294 [91 Cal.Rptr. 514] (Southfield); see Tri-Q, Inc., at pp. 218-220.) Thus, even when a contract is found to be illegal, in compelling cases it may be enforced to “avoid unjust enrichment to a defendant and a disproportionately harsh penalty upon the plaintiff.” (Southfield, at p. 294; see Asdourian v. Araj (1985) 38 Cal.3d 276, 292 [211 Cal.Rptr. 703, 696 P.2d 95]; see also Bus. & Prof. Code, § 7031.) We turn to an analysis of the current claim as alleged in the charging pleading.
As we have discussed, the oral contract in this case provided that Kyablue would advance money to Watkins that could only be used as specifically authorized for certain expenses and for participation in poker games. Utilization of the funds was further restricted to legal gambling. Beyond that, Watkins was required to follow Kyablue’s strategy in the poker games. The agreement also provided that Kyablue could call the agreement off at any time, in which case Watkins was obligated to return all funds to Kyablue that were not spent according to the terms of the agreement. In determining the level and degree of illegality involved, we begin with the relevant public policy potentially contravened. In this case, it is California’s policy against gambling itself rather than against specific manifestations of gambling, such as enforcement of debts or recovery of losses. According to the agreement, the funds at issue were never to be used for gambling purposes where the gambling was illegal. As a result, it is simply the gambling nature of the contract that brings its enforceability into question.
Although there traditionally has been strong condemnation of gambling, courts also have noted that “. . . California’s historical public policy against gambling has been substantially eroded.” (Metropolitan Creditors Service v. Sadri (1993) 15 Cal.App.4th 1821, 1828 [19 Cal.Rptr.2d 646] (Metropolitan), disagreed with in Kelly v. First Astri Corp. (1999) 72 Cal.App.4th 462, All [84 Cal.Rptr.2d 810] (Kelly)-, see Crockford’s Club Ltd. v. Si-Ahmed (1988) 203 Cal.App.3d 1402, 1406 [250 Cal.Rptr. 728] [noting the “expanded acceptance of gambling in this state”], declined to follow in Metropolitan, at p. 1827 & Kelly, at p. 485.)[2] The express limitation of the use of funds to legal gambling further mitigates any unlawfulness of the contract since its execution would violate only a waning public policy against gambling in general, rather than an express prohibition such as Penal *1294 Code section 330, which proscribes illegal gambling.[3] If Kyablue could not call off the agreement, as he was expressly authorized to do under its terms, Watkins would retain the entire $38,054 transferred to him despite being complicit in the contract formation. We find that “the forfeiture resulting from unenforceability is disproportionately harsh considering the nature of the illegality,” the relative fault of the contracting parties and the unjust enrichment of Watkins. (Tri-Q, Inc., supra, 63 Cal.2d at p. 220; see 1 Witkin, Summary of Cal. Law (10th ed. 2005) Contracts, §§ 441, 449, pp. 481-482, 489-490.)
Watkins relies on Kelly, supra, 72 Cal.App.4th at pages 469-471 for his contention that the entire agreement is unenforceable because it involves a gambling consideration, and there is a “ ‘long-standing public policy regarding gambling’ ” that bars judicial resolution of actions for the recovery of losses or the enforcement of debts associated with it. Kelly concerned an action to recover gambling losses and lost gambling profits; the appellate court upheld a summary judgment for the defendant. (Id. at pp. 488-489.) The decision rested on two grounds: (1) the specific gaming involved was illegal, and (2) the plaintiff’s action was “barred as a matter of law and strong public policy.” (Id. at p. 489.) Since the locations where Watkins was to gamble were expressly limited to those where it was not illegal to do so, we look to the second prong of the Kelly decision.
Kelly relied on cases involving illegal gambling-related contracts. (Kelly, supra, 72 Cal.App.4th 462.) One of those cases was Metropolitan, supra, 15 Cal.App.4th at page 1828, which found an action for the enforcement of gambling debts barred by public policy. The Kelly court found the same policy determination applied to an action for the recovery of gambling losses. (Kelly, at pp. 485-490.) However, the Metropolitan court cited the “critical distinction between public acceptance of gambling itself and California’s deep-rooted policy against enforcement of gambling debts—that is, gambling on credit.” (Metropolitan, supra, 15 Cal.App.4th at p. 1828.) The clear policy against enforcement of gambling losses and debts does not control the decision here. Analyzing the contract’s illegality involves interpreting the public policy it offends, since California does not criminalize all gambling outright. In this case, the pertinent public policy concerns are with regard to gambling generally rather than the historic distaste for judicial *1295 resolution of “actions for recovery of gambling losses and actions to enforce gambling debts.” (Kelly, at p. 489.)[4]
Even where the parties to a contract are in pari delicto and the contract itself is malum in se, courts have enforced the plaintiff’s repudiation of the unlawful contract and recovery of funds before the purpose of the contract has been accomplished. (Wassermann v. Sloss (1897) 117 Cal. 425, 432-433 [49 P. 566]; Johnston v. Russell (1869) 37 Cal. 670, 675-676; 1 Witkin, Summary of Cal. Law, supra, § 447, p. 488.) The purpose of these rulings is to provide an incentive to the parties to abandon their unlawful pursuits, thereby protecting the public.[5] Thus, our Supreme Court has held that while generally “no action in affirmance of an illegal contract can be maintained,” a plaintiff “may disaffirm a wagering contract” at any time before the wager is placed. (Hill v. Kidd (1872) 43 Cal. 615, 616.) Stated another way, granting relief “to one who repudiates an illegal contract is entirely different from granting relief to one who seeks to enforce it.” (Severance v. Knight-Counihan Co. (1947) 29 Cal.2d 561, 569 [177 P.2d 4].) Kyablue’s amended complaint pleads such a case. Even were it the case—a point we do not decide—that the oral agreement at issue here could be considered unlawful under section 1667, its repudiation before any gambling occurs is still an actionable claim. According to the amended complaint, the funds at issue were handed over to Watkins, but were never wagered. Kyablue’s claim for repudiation meets the requirement of this exception.
Additionally, the complaint makes clear that two separate funds of money were provided to Watkins by Kyablue, one for gambling purposes and the other in the form of a loan for personal expenses. Contracts that involve both unlawful and lawful provisions may be enforced if the illegal portion is severable from the legal. (Keene v. Harling (1964) 61 Cal.2d 318, 320-321 [38 Cal.Rptr. 513, 392 P.2d 273]; Mailand v. Burckle (1978) 20 Cal.3d 367, 384 [143 Cal.Rptr. 1, 572 P.2d 1142].) For this additional reason, Kyablue is *1296 entitled to seek enforcement of the contractual provision allowing him to seek repayment for the personal loan.[6]
We conclude that Kyablue’s amended complaint asserts actionable claims on the oral agreement underlying it. The rule against the enforcement of unlawful contracts does not bar his claims on the facts alleged.
DISPOSITION
The judgment is reversed and remanded for further proceedings consistent with this opinion. Appellant is to have his costs on appeal.
Manella, J., and Suzukawa, J., concurred.
A petition for a rehearing was denied November 28, 2012.

 All further statutory references are to the Civil Code, unless otherwise specified.

 See Business and Professions Code section 19801, subdivision (b), which recognizes the history of state regulation and positive outcomes of lawful gambling in job creation and increased tax revenue.

 Watkins contends that Kyablue’s insertion into the amended complaint of playing poker on the Internet as one possible use of the funds dictates the outcome of this case. His argument is that such activity violates Penal Code section 330, which lists the games prohibited from being played. However, we find the subsequent condition in the complaint, limiting the locations to areas “where playing poker was not a violation of any laws,” controls; thus playing poker online in this state would be permitted only if doing so is legal.

 This historic distaste has its roots in 18th century English law, originating in the Statute of Anne (9 Anne, ch. 14, § 1; Bac. Abr. 456). (Metropolitan, supra, 15 Cal.App.4th at p. 1824.) The Supreme Court of Nevada discussed the evolution of that statute’s influence on the approach to gambling contracts. In West Indies, Inc. v. First National Bank of Nevada (1950) 67 Nev. 13 [214 P.2d 144], the court found the portions of the Statute of Anne adopted into law by Nevada courts, which greatly restricted gambling and the enforcement or recovery of gambling debts or losses. The court concluded that while the provisions of the statute allowing for recovery of gambling losses had been superseded by state law, the remainder, which barred a suit to enforce gambling debts, was still in force. (214 P.2d at pp. 148-155.)

 However, an action to repudiate such a contract is viable only if the transfer of the funds to the other party is not in and of itself illegal.' (Schenck v. Hirshfeld (1913) 22 Cal.App. 709, 710-711 [136 P. 725].) We are not asked to decide, and do not decide, whether a contract in which one party funds another to gamble pursuant to specific directions, at a place where it is legal to do so, is itself a crime.

 Cf. Fong v. Miller (1951) 105 Cal.App.2d 411, 414-415 [233 P.2d 606], where the entire contract was premised upon an illegal venture that was substantially integrated, while here, the pleading does not establish that the two funds cannot be separated.